BOWES, Judge.
Appellant, known hereinafter as Mrs. J., appeals a judgment of the Juvenile Court denying her motion to set aside a voluntary surrender of the custody of appellant’s minor child, M.B. We affirm as follows.
M.B. came into the custody of the Department of Health and Human Resources by virtue of a petition filed in Juvenile Court for the Parish of Jefferson on July 30, 1984. The petition alleged that M.B. had suffered injury as a result of neglect or abuse on the part of her parents. (The parents, married at the time of the initial action, were subsequently divorced, and the mother remarried, becoming “Mrs. J.”) The child was placed in temporary protective custody on September 7,1984, at which time counsel was appointed to represent Mrs. J. in any further proceedings.
On September 28, 1984, pursuant to stipulation by both parents, M.B. was adjudicated a child in need of care, with continued custody remaining with the Department (DHHR).
In December 1984, Mrs. J. was psychologically evaluated by Dr. William Janzen. She was diagnosed as having a “Mixed Personality Disorder,” and found to be in need of long term psychotherapy. Dr. Jan-zen was pessimistic that she would ever become “even a minimally adequate parent.”
In January, 1985, a disposition hearing was held in which legal custody of M.B. remained with DHHR and incorporated the agency service plan as part of the court judgment. In pertinent part, the service *200 plan called for Mrs. J. to engage in psychotherapy and assist her daughter regularly to attempt reestablishment of their relationship. The child was placed in a foster home by DHHR.
In October, 1985, Mrs. J. was re-evaluated by Dr. Janzen. He concluded that her personality structure had not changed since the previous year, that she was not and would in all likelihood never be capable of parenting her daughter, and it would be detrimental to the child to live with her mother.
That same month, a review hearing was had at which it was decided, according to the judgment, that another review would be held in January of 1986 “in order for the case worker to advise the court as to whether or not termination of parental rights proceedings will be pursued.” Mrs. J.’s counsel was present at that hearing.
On December 2, 1985, Mrs. J. contacted Mr. Donald Robinson, the family service worker on the case, and indicated her desire to visit her daughter. Mrs. J. came into DHHR’s offices with her (present) husband. At that time, Mrs. J. was informed that the agency planned to file a petition for termination-of her parental rights. Mr. Robinson explained that this would result in a court hearing, including the testimony of witnesses. At that time, Mrs. J. inquired about the possibility of surrendering or “giving up” M.B., and the effect such surrender may have on other children she may have in the future.
Mrs. J. visited her daughter on December 12. On December 13th, she telephoned Mr. Robinson and agreed to sign the document surrendering M.B. She went into the office that same morning and, later that day, accompanied by Mr. Robinson, signed the act of surrender in the office of attorney-notary, James Maguire. Mrs. J.’s attorney was not contacted, nor was he present at the time the act was signed.
Upon notification of the surrender via a letter from DHHR to the court, Mrs. J.’s attorney filed a motion to set aside the surrender, which motion was heard and denied by the trial court. This appeal ensued.
By brief, appellant argues that the trial court erred in denying the motion because counsel for appellant was not notified of the Department’s action in obtaining, and attempting to obtain, Mrs. J.’s consent; that appellant was suffering from a serious psychological and personality disorder, and “under the totality of circumstances, appellant was denied due process of law and was denied fundamental fairness.”
The thrust of appellant’s argument appears to be that Mrs. J.’s mental condition, combined with the absence of her attorney at the time the surrender was effected, and the “threats” and “coercion” exerted by Mr. Robinson, render the Act of Surrender invalid.
At trial, Mrs. J. testified that after discussing visitation arrangements with Mr. Robinson, the social worker began “threatening” her about giving up her parental rights. She stated that she told the worker that she could not do that, at which point Mr. Robinson told her that, at a termination hearing, many people would testify against her, and, in her words, “would make me look lower than a snake. I couldn’t agree with him, but I had to do it.” Mrs. J. told Mr. Robinson that she had a lawyer, but did not tell him that she wanted to consult her attorney. She was told to take some time to think about the surrender. Some days later (Mrs. J. could not remember how many), she telephoned Mr. Robinson and agreed to the voluntary surrender. That same day, she walked to the DHHR’s offices and, several hours later, went to the attorney-notary’s office to execute the document. She read the document, and stated also that Robinson, as well as the notary, read it to her. The extent of the coercion, according to Mrs. J., was the threat of having to undergo a full-blown evidentiary hearing in a petition for termination. Mrs. J. did not attempt to contact her attorney either before, during, or after the surrender and, when questioned as to why, she replied simply “I’m not sure.”
*201 Mr. Robinson testified that on December 2, Mr. and Mrs. J. came into the office, at which time he explained the Department’s intention of filing a petition for termination of parental rights. Mrs. J. brought up the possibility of voluntary surrender and was told to think about it. Eleven days later, Mrs. J. told him that she had decided on the voluntary surrender. Mr. Robinson denied that any threats were made to coerce Mrs. J. and further stated that, although she cried in the notary’s office, Mrs. J. did not indicate that she felt she was being pressured or forced to sign. There was no discussion on that day regarding Mrs. J.’s attorney.
Celeste Skinner, the foster case worker, testified that on December 12th, the day before the act was signed, Mrs. J. visited her daughter and told the child that she had decided to “sign the papers” and that this was the last time she would see her.
James Maguire, the notary, stated that he read the act to Mrs. J. and had no reason to believe that she did not understand it; it was explained to her that the act was irrevocable. There was no indication of pressure or coercion, nor did she request that her attorney be notified.
We have read the testimony carefully, particularly that of Mrs. J., and find nothing to support appellant’s contention that her psychological problems rendered invalid her consent to the act of surrender. The psychological reports in the record demonstrate that the diagnosis of “mixed personality disorder” is indeed a grave problem. However, there is no indication that Mrs. J. is, or was, incapable of understanding the full impact of her decision to surrender M.B. The entire record, including reports as well as testimony, portrays a woman of (at least) average intelligence, and, while her emotional problems appear to seriously impair her judgment in many respects, we are unable to conclude that she was not able to appreciate the gravity of the situation. In fact, her initial hesitation, allowing an appreciable period of time to pass before acquiescing, her statements to her daughter, and her tears, seem to be quite normal under the circumstances, evidencing an understanding of the actions being taken.
It may be that, as appellant seems to infer, Mrs. J.’s mental problems rendered her more amenable to “threats” and “coercion” than the average person. However, we agree with the trial judge that no such coercion took place. The trial judge’s superior ability to judge the credibility of the witnesses is so well established in our jurisprudence that no citation of authority is necessary. The extent of the “force” or threat, even according to Mrs. J. herself, was the necessity of a full-blown evidentiary hearing, in lieu of the voluntary surrender. The mere fact that a parent is made aware that he or she may have to choose between a trial on the merits and a voluntary act does not, in and of itself, constitute a threat or force so as to invalidate the surrender. We agree with the trial judge’s finding that in the instant case Mr. Robinson merely stated the Agency’s plan to file for termination and explained the general procedure of such hearings. There is absolutely no evidence of any threats of a physical, mental, or emotional nature having been made by Mr. Robinson or anyone else involved in the case. Therefore, we find that Mrs. J. signed freely and absent any vice of consent. Once formally given without any vice, consent need not continue and a change of mind afterward is immaterial. Allen v. Volunteers of America, 378 So.2d 1030 (La.App. 2nd Cir.1979).
La.R.S. 9:402 provides that a parent may voluntarily surrender the permanent custody of a child to a licensed agency by appearing before a notary and two witnesses, and signing an authentic act transfer- ■ ring all his rights, authority and obligations (involving the child) to the agency.[1] There *202 is no requirement that an attorney represent the surrendering parent. In Golz v. Children’s Bureau of New Orleans, Inc., 326 So.2d 865 (La.1976), the Supreme Court found that failure of the parents to consult legal counsel during their relationship with the Bureau did not render the act of surrender executed by them invalid. “The petitioners have cited no constitutional authority requiring that parties be represented by legal counsel in the confection of contracts of this type, and we know of none.”
Under the circumstances presented here, the fact that Mrs. J. was represented by counsel and failed to consult with him does not alter the situation. Mrs. J. was not prevented from contacting her attorney; she was not even advised against it. Approximately eleven days passed between the time Mrs. J. first discussed surrender and the date she actually signed the act. Another two weeks elapsed before DHHR notified the court and Mrs. J.’s attorney that the matter had occurred, and at no time did appellant even attempt to consult counsel, although she was well aware that she had an attorney who had appeared in court with her previously. She couldn’t explain why to the Court. We do not find that the agency was under an obligation to contact her attorney, although the workers were aware that she did have legal representation.
Consequently, we reject the appellant’s constitutional attack. As did the Supreme Court in Golz, supra, and more recently the Fourth Circuit in F.D. v. Associated Catholic Charities of New Orleans, Inc., 480 So.2d 380 (La.App. 4th Cir.1985), we find that the statutory procedure of R.S. 9:402 does not violate due process by failing to afford legal counsel or a judicial hearing before surrender of parental rights in a formal instrument. We refuse to impose such a stricture in the present case because appellant was represented by counsel in the pending juvenile court proceedings. The totality of the circumstances mitigates toward the conclusion that appellant’s constitutional rights to due process were not abused.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.

. § 402. Voluntary surrender of custody of child; procedure
Any parent of a child, whether the child was born in wedlock or out of wedlock and whether the parent is over or under twenty-one years of age, may surrender the permanent custody of his child to an agency for the purpose of having the child adopted by appearing before a notary *202 and two witnesses and declaring that all of his rights, authority, and obligations, except those pertaining to property, are transferred to the agency. This authentic act shall be signed by the agency and shall constitute a transfer of custody to the agency after which the agency shall act in lieu of the parent in subsequent adoption proceedings. No surrender of the custody of a child shall be valid unless it is executed according to the provisions of this Part.