DUFRESNE, Judge.
The child in this case, T.C., first came to the attention of the district court in July of 1987 when an emergency instanter order was issued authorizing the Department of Social services to take the minor child into custody. The affidavit filed in support of the instanter order alleged physical abuse and/or neglect of T.C. by his biological mother. At the continued custody hearing on July 24, 1987, the court ordered that the Department retain the provisional protective custody of T.C. until an investigation could be completed.
On August 17, 1987, a petition was filed in the 29th Judicial District Court requesting that T.C. be adjudicated a child in need of care. The petition was based on alleged abuse and/or neglect by the child’s mother. The matter was heard on October 7, 1987, at which time the court adjudicated T.C. to be a child in need of care. The judge placed T.C. in the custody of the Department and set visitation with the mother. The child’s mother was also ordered to attend parenting classes and submit to psychiatric and psychological evaluation.
On July 7, 1988, the mother surrendered T.C. to the Department of Social Services, thereby freeing him for adoption. In addition to surrendering T.C. the mother also signed a surrender form on four of her other sons.
At the review hearing which was ultimately conducted on October 24, 1988, the court set aside the act of surrender. The court also ordered that the mother continue in parenting skills classes, that her visitation with T.C. be continued, and that Carolyn Kennedy (a social worker for the Department) be removed from the case. A written judgment was signed on September 12, 1989.
From this judgment of October 24, 1988, revoking the act of surrender that the Department of Social Services is now appealing. The child’s attorney is also requesting that the trial court’s judgment of October 24, 1988 be reversed, stating that it is his belief that it would be in the best interest of the child to reinstate the act of surrender, thereby freeing the child for adoption.
The Department of Social Services lists three assignments of error in its brief:
1. The Juvenile Court erred in setting aside an authentic act of voluntary surrender of parental rights to a state agency because of the absence of the parent’s court-appointed attorney.
2. The Juvenile Court erred in suggesting that it must approve an authentic act of voluntary surrender of parental rights made to a state agency as in the “best interest” of the parent and child.
3. The Juvenile Court erred in setting aside an authentic act of voluntary surrender of parental rights absent any evidence or testimony that would suggest fraud or duress.
ASSIGNMENT NO. 1
The applicable statute here provides as follows:
LSA-R.S. 9:402
Any parent of a child, whether the child was born in wedlock or out of wedlock and whether the parent is over or under twenty-one years of age, may surrender the permanent custody of his child to an agency for the purpose of having the child adopted by appearing before a notary and two witnesses and declaring that all of his rights, authority, and obligations, except those pertaining to property, are transferred to the agency. This authentic act shall be signed by the agency and shall constitute a trans *1371 fer of custody to the agency after which the agency shall act in lieu of the parent in subsequent adoption proceedings. No surrender of the custody of a child shall be valid unless it is executed according to the provisions of this Part.
In State-in-Interest-of-M.B., 493 So.2d 198 (La.App. 5th Cir.1986), this court interpreted LSA-R.S. 9:402, stating as follows:
There is no requirement that an attorney represent the surrendering parent. In Golz v. Children’s Bureau of New Orleans, Inc., 326 So.2d 865 (La.1976), the Supreme Court found that failure of the parents to consult legal counsel during their relationship with the Bureau did not render the act of surrender executed by them invalid. ‘The petitioners have cited no constitutional authority requiring that parties be represented by legal counsel in the confection of contracts of this type, and we know of none.’
State in Interest of M.B., supra at pp. 201-202.
The law is clear that no attorney was required to be present at the execution of the act of surrender in favor of the Department. The surrender, in the present case, was executed by the mother before a notary and two witnesses. In addition, the surrender was signed by Carolyn Kennedy, an agency representative. Since all of the technical requirements of LSA-R.S. 9:402 were met, the surrender is legally valid, despite the absence of the mother’s court-appointed attorney.
ASSIGNMENT NO. 2
A similar issue was addressed in State in Interest of E.E., 537 So.2d 229 (La.App. 4th Cir.1988). In that case, the trial judge set aside an act of surrender executed in favor of a state agency because the child, E.E., was within the jurisdiction of the juvenile court and the transfer of custody to the state was not in E.E.’s best interest. The Fourth Circuit in reversing the order of the trial court setting aside the act of surrender, concluded that appellants were correct in their assertion that LSA-R.S. 9:402 does not require judicial approval for an act of surrender to an agency. “Therefore, we find that the juvenile court judge was without the authority to invalidate these properly executed acts of surrender to a state agency by E.E.’s parents.” State in Interest of E.E., supra at p. 231.
The appellant is correct that judicial approval is not required to validate, as being in the “best interest” of the parent and child, an act of surrender made to a state agency. As discussed in Assignment of Error Number One, supra, all of the technical requirements of LSA-R.S. 9:402 were complied with, thereby resulting in a legally binding act of surrender.
ASSIGNMENT NO. 3
In agency cases, a formal act of surrender is permanent and irrevocable, provided there is no vice of consent. Consent may be vitiated by error, fraud, or duress. LSA-C.C. art. 1948. Where the natural parent sufficiently alleges that she has surrendered her child under such pressure and coercion, she states a cause of action entitling her to offer evidence in support of those allegations. However, “an unwed mother’s vacillation in deciding whether or not to surrender her child, though indicative of her torment and heightened emotions about her dilemma, does not necessarily prove that her consent to the surrender was legally vitiated.” F.D. v. Associated Catholic Charities, Etc., 480 So.2d 380, 382 (La.App. 4th Cir.1985), writ denied 481 So.2d 1353 (La.1986), cert. denied 479 U.S. 870, 107 S.Ct. 237, 93 L.Ed.2d 162 (1986). See also Allen v. Volunteers of America, 378 So.2d 1030 (La.App. 2nd Cir.1979), writ denied 381 So.2d 509 (La.1980); Golz v. Children’s Bureau of New Orleans, Inc., 326 So.2d 865 (La.1976), appeal dismissed 426 U.S. 901, 96 S.Ct. 2220, 48 L.Ed.2d 827 (1976).
In this assignment, appellant alleges that “the transcript and record of the proceedings of October 24, 1988 are void of *1372 any testimony, evidence, or pleadings that could be construed as a collateral attack of fraud or duress on the validity of the surrender. Absent such a showing, the surrender of parental rights is presumed valid.” In response, appellee, citing numberous quotes from the transcript, argues that “the totality of the circumstances mitigates towards the conclusion that Ms. Coleman’s ‘consent’ to the voluntary surrender was lacking at the time of execution.”
At the review hearing on October 24, 1988, the mother testified that she signed the surrender papers because the social worker told her that she had to because she did not show up for court. However, she then admitted that she understood that the form she signed was to surrender her children with the result that she would not be able to see them again. She then contradicted this statement by testifying that she did not know that she would not be able to see her children anymore. She further told the court that it was not her intention to give the children up for adoption but she was told that she had to.
Ms. Joanne Johnson, the supervisor of the case worker Carolyn Kennedy, informed the court that she was aware that Carolyn Kennedy talked to the mother about the possible termination of her parental rights of several of her children. According to Ms. Johnson, it was at this point that she decided to sign surrender papers on T.C. and four of her other children.
After listening to this testimony, the judge expressed her concern that Carolyn Kennedy was still on the case and was the one who had presented the surrender papers to the mother since the Judge had ordered Ms. Kennedy to remove herself from the case, as she was very hostile and combative with T.C.’s mother. Despite the court’s order, Carolyn Kennedy did not remove herself from the case until October 24, 1988, the day of the revocation of the surrender.
Although the record clearly supports the fact that there were personality problems between the mother and Carolyn Kennedy, sufficient evidence was not produced to show a lack of consent at the time of the execution of the surrender. Absent such a showing, the surrender is presumed to be valid.
Accordingly, the trial judge did not have the authority to invalidate the act of surrender by T.C.’s mother, thus we reverse the trial court’s judgment and order that the act of voluntary surrender executed by T.C.’s mother be reinstated.
REVERSED.