HAMITER, Justice.
 

 Presented by this appeal for consideration is the matter of the adoption of a female child born in the City of New Orleans on November 19, 1947.
 

 Twenty-four days after such birth (December 13, 1947) the 31 year old unmarried mother, Wilma Annabel Campbell, executed a notarial act by which she formally surrendered unto the Protestant Home for Babies of New Orleans (and it accepted) the full legal care, custody, control and possession of the child. Among other things the instrument recited: “Appearer further declared that this waiver and complete surrender is executed for the purpose of enabling the said Protestant Home for Babies
 
 *1081
 
 eventually to find a satisfactory home for the said child, and with the distinct understanding, on her part, the unmarried mother of the said child, that any adoption, which may hereafter be had of the said child, shall be with the full understanding, on the part of all parties thereto, that she has hereby, forever and irrevocably, surrendered and abandoned the said child, and waives any and all rights to the legal care, control, or custody thereof; the same, in fact, as if the said child were a foundling child, in the legal care and custody, control, possession and guardianship of the Protestant Home for Babies, of the City of New Orleans, Louisiana.”
 

 In force and effect at the time of the formal surrender, and under the authority of which the instrument was executed, was Act No. 91 of 1942. Sections 1 and 2 of this statute provided:
 

 Section 1. “ * * * That an unmarried mother, whether over or under twenty-one years of age, shall have the right to surrender the legal care, custody and control of her illegitimate child or children to institutions or social agencies approved by the State Department of Public Welfare * * * by appearing before a Notary Public and two- witnesses and executing a formal release of the care, custody and control of the said illegitimate child or children to such institution or social agency approved by the Department of Public Welfare for the State of Louisiana * * and relinquishing any and all rights which said unmarried mother has or may have to 1;he said child or children, if said institutions or social agencies approved by the Department of Public Welfare of the State of Louisiana * * * consent to said release and accept the care, custody and control of said child or children.”
 

 Section 2. “That institutions or social agencies approved by the Department of Public Welfare for the State of Louisiana * * * after having accepted the care, custody and control of said child or children of such unmarried mothers whether over or under the age of twenty-one years, shall have the right tO' place such child or children for adoption.”
 

 On January 13, 1948, the Protestant Home for Babies (referred to hereinafter as the Home) released the child to Mr. and Mrs. William Slaughter Ball for the purpose of adoption.
 

 Subsequently, specifically on April 8, 1949, Mr. and Mrs. Ball (referred to hereinafter as petitioners) filed a petition in the Juvenile Court for Orleans Parish praying that a final decree of adoption of the child be granted in their favor, they being joined therein by the Home. The mentioned natural mother (referred to hereinafter as opponent), on June 1, 1949, opposed in writing this petition for adoption, she alleging the nullity of the act of surrender for the reasons (1) that the Home was not licensed or approved by the State Department of Public Welfare on December 13, 1947 (the date of the instrument) to engage
 
 *1083
 
 in child placing and to accept the release of ■ her child, and (2) that she surrendered the child under pressure and coercion of an employee of the Home. Further, opponent alleged that the consent recited in the act of surrender has been withdrawn; that she has since consistently refused to agree to any adoption; and that she has done everything within her power to' regain the child, including the institution of habeas corpus proceedings (now pending) in the Civil District Court for the Parish of Orleans.
 

 To the opposition petitioners tendered a plea of prescription of six months (founded on Section 6 of Act No. 227 of 1948, LSA-RS 9:405), an exception of no cause or right of action, and a plea of estoppel. The Juvenile Judge referred the last two of these to the merits. However, on the face of the pleadings, he considered and maintained the plea of prescription, his assigned reasons for the ruling being:
 

 “In the case at bar the act of surrender was executed on December 13, 1947. Act 227 of 1948 [LSA-RS 9:401 et seq.], was approved July 1, 1948, and the opposition to the adoption by Wilma Annabel Campbell, mother of the child was not instituted until June 1, 1949, more than six months after the enactment of Act 227 of 1948.
 

 Therefore, under the terms and provisions of Act 227 of 1948, of the State of Louisiana, Section 6, the. court maintains the plea of prescription.”
 

 “Thereafter, at the commencement of a hearing on the petition for a final decree of adoption, counsel for the Home moved that the attorney for opponent (she was not present) be removed from the room for the reason that the plea of prescription, directed at the opposition, had been maintained and opponent no longer was interested in the proceeding. The court upheld the motion and excluded opponent’s attorney.
 

 The hearing on the adoption petition then proceeded, during which there was offered and received testimony of the prospective adoptive parents and of representatives of both the Home and the Welfare Department. Also received in evidence was a confidential report prepared by the latter respecting the adoption.
 

 After having had the matter under advisement for approximately a week, the court rendered and signed a judgment reading: “For the written reasons given by the Court, the Court denies to petitioners, Mr. and Mrs. William Slaughter Ball, the right to adopt the child, Barbara Gail Campbell.” This judgment of denial, as we appreciate the mentioned written reasons, was not 'based on the evidence adduced at the hearing on the adoption petition. Rather, it was rendered solely because of the continued opposition of the child’s mother to the adoption and under the authority of Green et ux. v. Paul, 212 La. 337, 31 So.2d 819, a decision of-this court in which there was enunciated and applied the doctrine that the continuing consent of the natural parent is vital to the validity
 
 *1085
 
 of an adoption decree. Thus, the Juvenile Judge, in his written reasons and without discussing the adduced evidence, quoted at length from the Green case; he pointed out that the natural mother here (through counsel) had in writing opposed petitioners’ adoption of the child; and he concluded: “The court is of the opinion that the facts and decision rendered by the Supreme Court in the case of Green et ux. v. Paul, are analogous to the case at bar, and the Supre'me Court’s decree in the case of Green et ux. v. Paul is so profound in philosophy, and so correlated with this issue, that the court denies to petitioners, Mr. and Mrs. William Slaughter Ball, the right to adopt the child, Barbara Gail Campbell.”
 

 From the judgment petitioners are appealing. And the appeal, according to all counsel, presents for review not only that judgment but also the ruling on the plea of prescription. We shall consider the latter immediately.
 

 Although the surrender of the child on December 13, 1947 was made under the authority of Act No. 91 of 1942 (it being then in force), the plea of prescription, directed at the opposition and sustained by the Juvenile Court, is predicated on Section 6 of Act No. 227 of 1948, the effective date of which was more than six months prior to the filing of such opposition. The section invoked recites: “No action to annul any court order or decree of abandonment of a child, or attacking the validity of any voluntary surrender of- custody of a child prior to the effective date of this Act, where the reason for annulment or attack is lack of jurisdiction, a defect in the procedure followed, lack of capacity or authority of the person executing the surrender, or the alleged invalidity of the statute under which the decree was rendered or surrender executed, shall be brought after the lapse of six months from the effective date of this Act.”
 

 To us these provisions do not appear to be ambiguous. They, as we read them, clearly create a six months’ period of repose applicable exclusively to the making of judicial attacks for four specifically named reasons on those acts of surrender and decrees of abandonment confected pri- or to the effective date of the statute.
 

 Undoubtedly, the attack made in the opposition to which petitioners’ plea of prescription is directed was levelled at an act of surrender executed prior to the effective date of Act No. 227 of 1948, and it was not initiated during the created six months’ period of repose. However, opponent is not seeking the nullity of the surrender on any one of the four statutory grounds' enumerated. The gravamen of her attack is that the Home was not approved by the Welfare Department to receive the child, as required, and that the surrender was obtained through pressure and coercion. And the statute provides no^ period of repose or prescription respecting charges of this nature. The plea of pre
 
 *1087
 
 scription of six months, therefore, is without merit and should have been overruled.
 

 In reviewing the final judgment of the Juvenile Court, which denied to petitioners the right to adopt the child, it must be remembered that such decree resulted from the application of the doctrine enunciated in Green et ux. v. Paul and the fact that the natural mother here continually opposed the adoption.
 

 Of course, it is always proper for the Juvenile Judge in passing upon a petition for the adoption of a child to take into .consideration the opposition thereto' of the mother, whether it be continuing or not and even though she has previously executed a formal act of surrender. Her expressions of disapproval may be weighed along with the testimony given by any other citizens in the interest of the child’s welfare when the judge, in his discretion, determines the important question of adoption.
 

 But a lack of continuing consent 'by the natural parent does not of itself and alone preclude an adoption where the child has been surrendered pursuant to the provisions of Act No. 91 of 1942. True, the majority holding in the Green case [212 La. 337, 31 So.2d 820], deemed to be decisive herein by the Juvenile Judge,' denied the adoption of a child because consent of the parent had been withdrawn prior to rendition of the final decree. However, that decision had as its basis the provisions of Act No. 154 of 1942 and, as pointed out in a footnote to the supporting opinion, the discussion therein “is not pertinent in cases of adoption of children surrendered under provisions of Act No. 91 of 1942.”
 

 A formal surrender executed pursuant to Act No. 91 of 1942, as we view the provisions of that statute, grants to the receiving and accepting agency irrevocable custody and control of the child, together with the privilege of placing it for adoption, and divests the mother permanently of all parental rights and claims. The latter, in other words, has no- further interest in the child other than that of the ordinary citizen, as above shown, in seeing that its welfare is best served. But the surrender is thus effective and irrevocable only in the event that it conforms strictly with the statutory provisions and that the instrument evidencing it is otherwise validly executed. In this connection we have in mind the following principles well settled in our jurisprudence. “Adoption is a creature of the law and is what the law makes it, and to establish the relation the statutory re-' quirements must be strictly carried out, otherwise the act of adoption is an absolute nullity.” Owles v. Jackson, 199 La. 940, 7 So.2d 192, and numerous cases therein cited; Green v. Paul, supra. An authentic act may be set aside where a party there-' to has been induced to execute it through fraud, error, duress or threats, and he is permitted to introduce parol testimony in support of allegations to that effect. Lynch
 
 *1089
 
 v. Heirs of Lynch, 23 La.Ann. 242; Moore & Coleman v. Rash, 30 La.Ann. 1157; Vicknair v. Trosclair, 45 La.Ann. 373, 12 So. 486; Harnischfeger Sale Corporation v. Sternberg Co., Inc., 179 La. 317, 154 So. 10; Unity Industrial Life Insurance Co. v. Dejoie, 202 La. 249, 11 So.2d 546; Baker v. Baker, 209 La. 1041, 26 So.2d 132.
 

 Opponent, in her written opposition, has made two charges which if true would render null and void the executed act of surrender. As above set forth she has alleged the surrendering of her child under pressure and coercion of a member of the Home and, further, that the Home at that time was not (as required by the statute) approved by the Welfare Department to accept the surrender. Hence, to this extent (but only thereto) her written opposition states a right and a cause of action, and she is entitled to offer evidence in support of those allegations. Accordingly, the matter will be remanded and opponent afforded the opportunity of making that proof. Thereafter, on the remand, the Juvenile Judge will consider her evidence along with that heretofore introduced on behalf of petitioners, and he will render a judgment on the petition for adoption and the opposition thereto such as is warranted by all of the evidence and consistent with the above stated views.
 

 For the reasons assigned the plea of prescription of six months is overruled, the judgment heretofore rendered by the Juvenile Court is annulled and set aside, and the case is remanded to that court for further proceedings according to law and consistent with the views hereinabove expressed.