326 So.2d 865 (1976)
William Jonathan GOLZ and Pamela Marie Fortier Golz
v.
CHILDREN'S BUREAU OF NEW ORLEANS, INC.
No. 57373.
Supreme Court of Louisiana.
January 29, 1976.
Reasons for Judgment given February 12, 1976.
Rehearing Denied February 20, 1976.
*866 Thompson & Perrin, Michael F. Thompson, Lafayette, for plaintiffs-applicants.
Baldwin, Haspel, Molony, Rainold & Meyer, Robert R. Rainold, New Orleans, for defendant-respondent.
SANDERS, Chief Justice.
Because of the exigencies of this case, requiring prompt disposition, we hand down our decision, the reasons for which will follow in due course.
The judgment of the Civil District Court for the Parish of Orleans, rejecting petitioners' demand, is affirmed.

SUMMERS, J., dissents.
Reasons for the judgment handed down herein on January 29, 1976.

SANDERS, Chief Justice.
The primary issue in this habeas corpus proceeding is whether or not a notarial act of surrender by parents of a child to a licensed adoption agency is valid and irrevocable. We hold that it is.
Petitioners, William Jonathan Golz and Pamela Marie Fortier Golz, are married and residents of Lafayette. On December 9, 1974, when Mrs. Golz was seven months pregnant, she came to New Orleans with the knowledge of her husband in order to arrange for the delivery of the baby at the New Orleans Charity Hospital and to initiate placement of the child for adoption. While in New Orleans, Mrs. Golz contacted the Children's Bureau of New Orleans, Inc., a state-licensed adoption agency. Mrs. Frances Keating, the intake supervisor, granted her an appointment on the same day. She conducted an intake interview, securing basic information concerning the family. She advised Mrs. Golz that placement would require the formal consent of both parents in an act of surrender and that once the surrender had been signed, it was irrevocable. After the mother inquired how soon the surrender could be signed, the intake supervisor advised her that it could be executed after the child was born.
The intake supervisor arranged for the assignment of Diane Lambly, a caseworker, to the adoption so that Mrs. Golz would be able to confer with her on her hospital visit scheduled for the following week. Mrs. Golz cancelled her trip to New Orleans the following week and advised the adoption agency that she would notify it when she returned.
From December 9, 1974, to February 12, 1975, Mrs. Golz had several telephone and written communications with Diane Lambly, the caseworker. During this period, she informed the agency that she had decided to have the baby delivered in Lafayette, instead of New Orleans. She expressed a desire to continue the adoption plan, and *867 the caseworker assured her that it could be done, despite the change in the place of delivery.
The child, Joshua Golz, was born on Thursday, February 13, 1975. The following day, Mr. Golz called the caseworker by telephone, advised her of the birth of the child, and made arrangements to bring the child for adoption on the weekend. The caseworker again explained that for placement both parents had to be present to execute a notarial act of surrender. She cautioned that when the notarial instrument was signed, they could no longer change their minds concerning the adoption. Ultimately, after a series of telephone conversations, the father telephoned that he and his wife had changed their minds about adoption. The Children's Bureau then closed the case.
On April 9, 1975, Mrs. Golz came to the Children's Bureau with the child and asked the caseworker if the agency would provide foster care pending the signing of a surrender by herself and her husband. She informed the caseworker that her husband was out of the state, but that he was agreeable to signing a surrender for adoption. The caseworker explained to her that the agency did not accept children for long-term foster care, but that it would accept temporary custody under the circumstances.
When the caseworker failed to hear from the parents by April 15, she telephoned the father. He stated that they had changed their minds about adoption and would come and get the bady. On April 18, the parents secured the child, and the case was again closed.
On August 18, Mr. Golz again telephoned the caseworker, expressing a desire to place the child for adoption. He ultimately inquired whether an act of surrender could be signed the same day. The caseworker advised him that arrangements would have to be made with an attorney, but that she would call him back. A few minutes later, the caseworker telephoned the parents to inform them that arrangements had been made with the attorney to handle the surrender. The caseworker asked the parents to come to her office upon arrival in New Orleans.
After the parents arrived at the Children's Bureau, the caseworker conferred with them a few minutes. During the brief conference, she informed them that after the Act of Surrender had been signed, it could not be "undone."
They then walked about five blocks to a law office, where they were joined by the Casework Supervisor, Mrs. Virginia C. Jane.
The Attorney-Notary invited the group into the conference room, where he read aloud the Act of Surrender and explained that it could not be revoked after it had been signed. It was then executed by the parents and the Casework Supervisor for the Children's Bureau in the presence of the Notary Public and two witnesses.
The following day, the parents telephoned the Children's Bureau, requesting that the child be returned to them. The bureau officials advised them that the Act of Surrender was final and could not be revoked. On August 21, 1975, the bureau placed the child in the home of adoptive parents. This litigation followed.
The trial judge found that the parents freely and voluntarily executed the Act of Surrender with full knowledge of its legal consequences and held that the Act of Surrender, being to a licensed agency, could not be revoked under the statute, LSA-R.S. 9:402. We granted certiorari to review the judgment of the trial court. 325 So.2d 282 (1976).
In this Court, the petitioners advance various arguments, but they can be summarized from the assignments of error as follows:
(1) There was no valid consent by the parents to the Act of Surrender.
*868 (2) Under the statute, the parents could and did revoke their consent.
(3) The statutory adoption procedure of LSA-R.S. 9:402 et seq. as applied here unconstitutionally deprives the parents and the child of due process of law.

Consent of the Parents
The consent of the parties is one of the requirements for an act of surrender. If consent is lacking, there is no valid surrender. LSA-R.S. 9:402; LSA-C.C. Arts. 1779, 1819; Cole v. Lumbermens Mutual Casualty Company, La.App., 160 So.2d 785 (1964); S. Litvinoff, 6 Louisiana Civil Law TreatiseObligations (Book 1), § 129, pp. 210-211 (1969).
As to consent, the trial judge found:
"There is no doubt in the Court's mind that there has never been any pressure, undue influence or the like brought to bear on these plaintiffs by the Children's Bureau. This is evident from the record and from December, 1974 up to the final act of surrender executed on August 18, 1975. It is also evident that these plaintiffs are mature individuals; not possessed of formal education beyond the ninth grade but by no means . . . illiterate."

"* * *
"The act of surrender executed in this case was not a rash, impulsive act on the part of the plaintiffs. It came after many months of careful and apparent continued thought and deliberation; during periods when these plaintiffs were thinking about surrendering their child, when the child was actually surrendered, when they had possession of their child and when they did not. . . ."
The finding of the trial judge is entitled to great weight. Canter v. Koehring Company, La., 283 So.2d 716 (1973); Ginlee v. Helg, 251 La. 261, 203 So.2d 714 (1967).
We concur in the finding. The record reflects that the decision to execute the Act of Surrender was reached after lengthy deliberation. Consummation of the surrender resulted from petitioners' independent action in contacting the Children's Bureau. Although petitioners had already been informed of the consequences of the Act of Surrender, the Attorney-Notary carefully read and explained the document to them before it was signed. It plainly stipulated:
"That appearers do hereby surrender the custody of said child unto CHILDREN'S BUREAU, an agency licensed by the Louisiana State Department of Public Welfare for the placement of children for adoption, represented herein by its Casework Supervisor, Mrs. Virginia C. Jane, here present and accepting said surrender, that with the execution of these presents, appearers give up and relinquish forever any legal claim to the said child, hereby transferring to the said Agency their authority over, and all of their rights and obligations to said child.
"Appearers further understand and consent that Children's Bureau may place said child for adoption, act for said appearers in any adoption proceeding, or provide such other care as shall be suitable, without consulting or informing appearers."
After the execution of the document, Mrs. Golz commented: "C'est fini" (all is over).[1] The Notary replied: "Yes, it is final."
The petitioners, however, equate the Act of Surrender to a contract of adhesion, in which because of disparate bargaining ability and the absence of negotiation between attorneys for the respective parties, consent was not free.
*869 Broadly defined, a contract of adhesion is a standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection of the weaker party. Often in small print, these contracts sometimes raise a question as to whether or not the weaker party actually consented to the terms. See LSA-C.C. Arts. 1766, 1811; S. Litvinoff, 6 Louisiana Civil Law TreatiseObligations (Book 1), § 194, pp. 346-349 (1969).
The Act of Surrender here raises no substantial question as to consent. It is a one-page, typewritten document, captioned Act of Surrender of Joshua Golz. Executed in strict conformity with the statute, it serves one purpose and one purpose only. It irrevocably transfers custody of the child to the adoption agency for placement in an adoptive home.
As we have noted, the parents were fully aware of the content and effect of the instrument before they signed it. We conclude, as did the trial judge, that the surrender represents a free and deliberate exercise of will. This being true, the law gives it legal effect.

Revocability of Consent
The petitioners assert, however, that under the statute consent can be revoked.

LSA-R.S. 9:402 provides:
"Any parent of a child, whether the child was born in wedlock or out of wedlock and whether the parent is over or under twenty-one years of age, may surrender the permanent custody of his child to an agency for the purpose of having the child adopted by appearing before a notary and two witnesses and declaring that all of his rights, authority, and obligations, except those pertaining to property, are transferred to the agency. This authentic act shall be signed by the agency and shall constitute a transfer of custody to the agency after which the agency shall act in lieu of the parent in subsequent adoption proceedings. No surrender of the custody of a child shall be valid unless it is executed according to the provisions of this Part."
On its face, the statute is clear. It authorizes the surrender of "permanent custody" to a licensed agency and the transfer to that agency of all of the parents' rights, authority, and obligations, excepting only those pertaining to property. Thereafter, the agency acts in lieu of the parents in adoption proceedings.
In the case of In re Amorello, 229 La. 304, 85 So.2d 883 (1956), dealing with the surrender of an illegitimate child under this statutory provision, this Court stated:
"The act of surrender in favor of an accepting agency gives the irrevocable control and custody of the child to that agency with the privilege of placing it for adoption."
See also Ball v. Campbell, 219 La. 1076, 55 So.2d 250 (1951); Wadlington, Adoption of Persons under Seventeen in Louisiana, 36 Tul.L.Rev. 201, 214 (1962).
Petitioners argue, however, that LSA.R.S. 9:404 makes a distinction between the mother's surrender of an illegitimate child and the parents' surrender of a legitimate child. That section provides:
"A surrender by the mother of a child born out of wedlock who has not been formally acknowledged or legitimated by the father terminates all parental rights except those pertaining to property. The same shall be true as to a court order of abandonment. However, no surrender or court order of abandonment as to only one living parent of a legitimate child shall be binding upon the other living parent."
Specifically, the petitioners argue that the section provides for termination of parental rights when an illegitimate child is surrendered by the mother but contains no such authority for the surrender of a legitimate *870 child. Hence, petitioners reason that the mother's surrender of an illegitimate child is irrevocable, while the parents' surrender of a legitimate child may be revoked.
In our opinion, the section does not lend itself to such an interpretation. The section merely regulates the termination of rights when there are two living parents. The mother's surrender of a child born out of wedlock, not formally acknowledged or legitimated by the father, terminates the rights of both parents. The same termination of the rights of both parents results from a court judgment of abandonment rendered against the mother of an illegitimate child. As to legitimate children, no surrender or court order of abandonment as to one parent is binding upon the other. An effective surrender of a legitimate child requires the concurrence of both living parents. Likewise, a judgment of abandonment as to both parents of a legitimate child requires that both parents be parties to the proceeding.
This construction is fortified by other provisions of the adoption statute. LSA-R.S. 9:425 dispenses with service of the adoption petition upon the living parents when the child has been legally surrendered to a licensed agency. LSA-R.S. 9:-427 dispenses with the requirement that the Welfare Department locate and consult the living parents when the child has been legally surrendered. LSA-R.S. 9:434 authorizes a final decree of adoption at the first hearing when the child has been placed by a licensed adoption agency.
Louisiana is not alone in providing for the irrevocability of an act of surrender to a licensed adoption agency. New Mexico, Nevada, Mississippi, Indiana, Illinois, Ohio, New Jersey, and the District of Columbia are among the jurisdictions which provide that such a surrender by a natural parent is irrevocable, in the absence of fraud or duress. See New Mexico Statutes Ann. § 22-2-27 (Supp.1975); Nev.Rev.Statutes § 127.080; Miss.Code of 1972 Ann. § 93-17-9; Ohio Revised Code Ann. § 3107.06(B)(2); Dist. of Columbia § 16-304 and § 32-786; N.J.Statutes 9:2-16; Acedo v. Arizona Dept. of Public Welfare, 20 Ariz.App. 467, 513 P.2d 1350 (1973); Catholic Charities of the Diocese of Galveston, Inc. v. Harper, 161 Tex. 21, 337 S.W.2d 111 (1960); Gonzales v. Toma, 330 Mich. 35, 46 N.W.2d 453 (1951); Kozak v. Lutheran Children's Aid Society, 164 Ohio 335, 130 N.E.2d 796 (1955); Adoption of Doe, 87 N.M. 253, 531 P.2d 1226 (1975).
We conclude that an act of surrender executed by both parents of a legitimate child to a licensed adoption agency in compliance with LSA-R.S. 9:402 is irrevocable.

Constitutionality of Statute
Finally, petitioners assert that the statutory procedure applied here is unconstitutional in that it deprives them and their child of due process of law. Specifically, petitioners contend that the statute is defective in that it provides for no hearing prior to the termination of parental rights and no notice or hearing prior to the granting of the adoption decree. Petitioners rely upon the decision of the United States Supreme Court in Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).
In Fuentes v. Shevin, supra, the Supreme Court of the United States held that the pre-judgment replevin statutes of Florida and Pennsylvania, giving a creditor the right to take immediate possession of movable property in the hands of the debtor, violated procedural due process under the Fourteenth Amendment to the United. States Constitution. The Florida statute authorized repossession of the goods. "without judicial order, approval or participation." The Pennsylvania statute was considered to be essentially the same, except that it had no requirement that a hearing on the merits of conflicting claims ever be held. See Mitchell v. W. T. Grant Co., 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974).
*871 The holding in Fuentes v. Shevin is inapplicable to the present statute. That case involved the involuntary dispossession, or seizure, of property in the possession of the debtor under the guise of state action. In the instant case, the parents voluntarily delivered possession of the child to the agency and surrendered their parental rights in a formal instrument. Such a voluntary contractual disposition is not reprobated by the Due Process Clause. Contrary to petitioners' contention, due process does not require that a judicial hearing precede the execution of the contract.
The petitioners, of course, had the right to consult legal counsel of their choice at any time during their relationship with the Children's Bureau. The record does not reflect whether or not they did. If they did not do so, as they now allege, the absence of such legal consultation does not make the surrender infirm or unenforceable. See LSA-C.C. Art. 1779. The petitioners have cited no constitutional authority requiring that parties be represented by legal counsel in the confection of contracts of this type, and we know of none.
Petitioners also complain that the statute precludes notice to the parents and an opportunity for hearing in the adoption proceeding subsequent to the surrender. We find no deprivation of due process here. Once the rights of the parents have been surrendered to the agency, the parents no longer have an interest to be protected in the adoption proceeding. The agency becomes the real party in interest and, as the statute provides, acts in lieu of the parents in subsequent adoption proceedings. It is well established that the Due Process Clause applies only when a person is subject to deprivation of "life, liberty, or property" by state action. See Reitman v. Mulkey, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967); Shelley v. Kraemer, 334 U.S. 1, 68 S.Ct. 836, 92 L.Ed. 1161 (1948).
We hold that the statute as applied in the instant case is constitutional.
With these reasons for judgment, we repeat the decree handed down in this matter on January 29, 1976: The judgment of the Civil District Court for the Parish of Orleans, rejecting petitioners' demand, is affirmed.
SUMMERS, J., dissents.
NOTES
[1] The New Cassell's French Dictionary, verbo fini, p. 348 (1971).