JONES, Judge.
Plaintiffs attorney Timothy J. Falcon, “Falcon”, appeals the trial court’s judgment dividing attorney’s fees 75% to Russell Stegeman and 25% to Falcon. We affirm the trial court’s judgment.
Falcon began his law practice as an associate with the law firm Stegeman & Marre-ro. In the agreement between the parties, which became effective on October 11, 1985, the day Falcon was sworn into practice, Falcon would receive 35% of the fee revenue on eases generated by him. This fee would remain the same regardless of whether Falcon was assigned to handle the case or not. On cases generated by the partners, Stegeman and Marrero, which were assigned to Falcon, he was to receive 25% of the fee revenue produced.
The agreement further provided that in the event of a termination between the parties, the agreed division of fees would not change whether or not the client’s case was completed by Stegeman & Marrero or Falcon.
In November 1985, Russell Stegeman was retained by Mr. Daryl Lawrence to represent him in a medical malpractice claim against the defendants named in the captioned matter. However, Mr. Lawrence died in June, 1986, and thereafter, Mrs. Lawrence retained Mr. Stegeman on behalf of herself and her minor child. Falcon was assigned to work on this case under Mr. Stegeman’s supervision and under the provisions of the October 11, 1985 employment contract providing that Falcon would receive 25% of the fee.
On November 12, 1986, Stegeman & Marrero entered into a second employment agreement with Falcon. Falcon was to receive 50% of the legal fees from cases he generated but would still receive 25% on cases assigned to him by the firm. As to cases generated by Falcon or assigned to him prior to October 1, 1986, the division of fees would be governed by the October 11, 1985 agreement. Again the contract provided that the division of fees would not change in the event of termination of the contract.
In December, 1988, Robert Marerro left the practice. He assigned his interest in the instant case to Mr. Stegeman as part of the withdrawal agreement. On April 17, 1989 and effective January 1, 1989, Stege-man and Falcon entered into a general partnership to practice law. It was agreed that files ongoing as of January 1, 1989, including the Lawrence case, would be governed by the provisions of the previous employment agreements, including the distribution of any fees arising therefrom.
In March 1990, the partnership between Stegeman and Falcon was terminated. On March 21, 1990 Stegeman received a letter from Jevonna Lawrence discharging him as her attorney and advising him that the files should be turned over to Falcon. On March 29, 1990, Stegeman filed a petition in intervention in these proceedings.
The case was settled in December 1990 for the amount of $285,000.00. On January 9,1991, Falcon filed a Motion to Assess Attorney’s Fees asking the trial court to divide the fee in this case on quantum meruit and asserting that $7,000 be paid to *1295 Stegeman and $107,000.00 be paid to Falcon. A hearing was held on the matter and the trial court rendered judgment on April 16, 1991 ordering that the attorney’s fees “be governed by the contract and therefore be divided 75% to Stegeman and 25% to Falcon.” It is from this judgment that Falcon appeals.
By his first assignment of error, Falcon argues that the termination provisions of the contract are ambiguous and the agreement should have been construed against Stegeman who drafted the contract.
Falcon quotes the language of the termination provision in the 1985 contract at section 14, paragraph (b) which provides that in the event that the contract is terminated and “certain clients should elect to dismiss employer ... the fee revenues derived from such cases shall be divided in the same manner....” The 1986 contract provides that the termination of the contract shall not affect the rights of Stege-man & Falcon as to a division of the fees entered into with certain clients on certain legal cases prior to the termination of this contract.
Falcon argues that the trial court did not determined which cases or which clients these provisions were applicable to. Nor does the contract provide a reasonable manner in which a third person could objectively determine when the contract should govern. Therefore, Falcon argues that it was error for the trial court to enforce a division of fees pursuant to the contract. Falcon maintains that existing law mandates that because Stegeman drafted the contract, it should be construed against him. Kenner Industries v. Sewell Plastics, Inc., 451 So.2d 557 (La.1984); Aguillard’s Enterprises, Inc. v. Smith, 439 So.2d 1158 (La.App.4th Cir.1983) writ denied 444 So.2d 1224 (La.1984); Kuhn v. Stan A. Plauche Real Estate Company, 249 La. 85, 185 So.2d 210 (La.1966). Falcon suggests that the matter be remanded to the trial court for a division pursuant to quantum meruit.
Mr. Stegeman responds that the trial court was provided with a detailed accounting of the earnings which Falcon received as an associate under the agreement. In addition, the trial court was presented with an accounting of the manner in which Stegeman and Falcon continued to adjust their capital accounts in accordance with these agreements after the parties agreed to practice as a general partnership in 1989. These documents refer to specific cases that generated fees payable under the terms of the pre-partnership agreements of the parties and show that the parties experienced no difficulty or ambiguity in interpreting or applying their agreements after Falcon ceased being associated with the firm. Based on the record, there is ample evidence for the court to determine that the provisions of the agreements governing the fee division in the instant case is not ambiguous in fact or in law.
We agree. The parties experienced no difficulty in interpreting the termination provision until the instant case. If ambiguity existed, Falcon would have attempted to address it prior to now. In fact, this ambiguity was adopted in two subsequent contracts between the parties.
By his second assignment of error, Falcon argues that Stegeman’s contract results in an effect which is in contravention of the Code of Professional Responsibility. Article 16, Rule 1.5 of the Code of Professional Responsibility, former D.R. 2-107, states that lawyers who are not partners or associates of the same firm are prohibited from dividing fees unless the client consents after full disclosure, the division is made in proportion to the services performed and the responsibilities assumed by each lawyer and the total fee does not exceed reasonable compensation for all legal services. Falcon argues that the rule applies to the facts of this case, regardless of when the contract was signed, because it is the effect of the contract that contravenes Rule 1.5. Falcon contends that the effect of the termination provision is in violation of the law and spirit of the Code of Professional Responsibility. He cites case law which he maintains establishes that the award of attorney’s fees or the *1296 division thereof has always been subject to the close scrutiny of the courts. See: Peoples National Bank of New Iberia v. Smith, 360 So.2d 560 (La.App. 4th Cir.1978); Walker v. Investment Properties, Ltd., 507 So.2d 850 (La.App. 5th Cir.1987) writ denied 513 So.2d 293 (La.1987); Scott v. Noel, 506 So.2d 1313 (La.App.2d Cir.1987); In the Matter of P & E Boat Rentals, Inc., etc., 928 F.2d 662 (5th Cir.1991).
Falcon cites In the Matter of P & E, supra as precedent. Therein, the court refused to enforce an oral agreement between two non-associated attorneys to split the fee on a case because it was in contravention of the Code of Professional Responsibility. However, this case is distinguishable not only because the two attorneys disputing the legal fee were never members of the same firm but also because the terms of their agreement were never reduced to writing.
Stegeman emphasizes that at the time the employment contract was signed in 1985, division of legal fees between lawyers was governed by DR 2-107 of the Code of Professional Responsibility (effective through December 31, 1986). Subsection (B) of that provision states: “This Disciplinary Rule does not prohibit payment to a former partner or associate pursuant to a separation or retirement agreement.” Furthermore, Stegeman observes that the trial was originally scheduled for May, 1990, only a few weeks after Mrs. Lawrence dismissed Stegeman. The trial court had adequate grounds to conclude, had it been necessary, that all obligations under the contract had been substantially performed prior to Stegeman’s dismissal and the dissolution of Stegeman and Falcon. Finally, Stegeman maintains that the objectives of DR 2-107 and its successor Rule 1.5 have been met. Stegeman relies on the following language in Roy v. Gravel, 570 So.2d 1175 (La.App. 3d Cir.1990) writ denied 573 So.2d 1118 (La.1991):
This rule is aimed at full disclosure to the client by his attorney that another lawyer has been associated by the lawyer, and will be sharing in the fees.... This rule mandates that the client must agree to the association and further that in such cases the division of the fee must be proportionate to the work performed by each lawyer_ (citations omitted).
Stegeman counters that because Mrs. Lawrence signed a retainer contract with Russell Stegeman d/b/a Stegeman and Marre-ro, she was put on notice that Falcon and Marrero, the other attorneys working at the firm, and staff members would be assisting in the preparation of the case. In doing so she agreed to allow the firm to split the fee however the attorneys saw fit. This assignment of error has no merit.
By his third assignment of error, Falcon argues that the contract is unenforceable as an adhesion contract. He claims that at the time the October, 1985 contract was executed the parties were not of equal bargaining power. Falcon was newly admitted to the bar. The contract was drafted by the firm and the terms were forced upon him. Falcon cites Golz v. Children’s Bureau of New Orleans, Inc., 326 So.2d 865 (La.1976) appeal dismissed 426 U.S. 901, 96 S.Ct. 2220, 48 L.Ed.2d 827 (1976) in arguing that in this case of obviously superior bargaining power, drafted by the party of superior position, the contract is one of adhesion and should not be enforced by the courts.
In Golz, 326 So.2d at 869, the Supreme court defined an adhesion contract as follows:
Broadly defined, a contract of adhesion is a standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection of the weaker party. Often in small print, these contracts sometimes raise a question as to whether or not the weaker party actually consented to the terms, (citations omitted).
In Golz the parties alleging that 'the contract was an adhesion contract were unsuccessful in proving it primarily because they were fully aware of the content and effect of the instrument before they signed it. Falcon has indicated that he was aware of the content and effect of the agreement he executed in the instant case.
*1297 There is no evidence that Stegeman drafted some sort of “boilerplate” form contract. There is no evidence of any “small print” provisions that raise a question as to whether Falcon gave informed consent to the terms. Furthermore, Falcon continued to work pursuant to the contract for another four years and did not attempt to alter this allegedly egregious language despite the fact that two subsequent contracts were signed. We find no error with the trial court’s judgment.
For the foregoing reasons, the trial court’s judgment is affirmed.
AFFIRMED.
BARRY, J., dissents with reasons.