936 So.2d 853 (2006)
HOFFMAN, SIEGEL, SEYDEL, BIENVENU & CENTOLA, APLC, Petitioner
v.
Delbert LEE, Elana Lee, First Bank and Trust Company, and Paychex, Inc., Defendants.
No. 2005-CA-1491.
Court of Appeal of Louisiana, Fourth Circuit.
July 12, 2006.
*854 Jacques F. Bezou, The Bezou Law Firm, Covington, LA, for Plaintiff/Appellee.
William J. Hamlin, Avery Lea Griffin, Hamlin, Griffin & Ellison, LLC, Abita Springs, LA, for Defendant/Appellant.
*855 (Court composed of Judge CHARLES R. JONES, Judge PATRICIA RIVET MURRAY, Judge EDWIN A. LOMBARD).
EDWIN A. LOMBARD, Judge.
Paychex, Inc. appeals the trial court's denial of its Motion to Stay Proceedings and Enforce Arbitration. For the reasons below, we reverse.

FACTS AND PROCEDURAL HISTORY
On December 10, 1998, Delbert Lee (hereinafter Mr. Lee) executed three contracts[1] with Paychex, Inc. on behalf of New Orleans law firm, Hoffman, Siegel, Seydel, Bienvenu and Centola, APLC (hereinafter Hoffman Siegel). At the time, Mr. Lee was the Chief Financial Officer and Legal Administrator for Hoffman Siegel. Hoffman Siegel had employed Mr. Lee for more than twenty years. During that time, Mr. Lee gained the trust of his employers with respect to the handling of the law firm's management and finances. Therefore, Mr. Lee was responsible for filing all federal and state payroll tax returns. In December 1998, Mr. Lee discharged Hoffman Siegel's then provider and signed up with Paychex to provide these services.
According to the contracts, Paychex, Inc. would process electronic funds transfers for Hoffman Siegel, including payment of federal and state taxes on the firm's behalf. Hoffman Siegel was required to maintain sufficient funds in its bank account to cover all electronic funds transfers. The contract also contained a choice of law clause and the arbitration clause at issue in the instant appeal. The choice of law provision provided that New York law was applicable. The arbitration clause provided that binding arbitration would be required in Rochester, New York for any dispute arising out of the contract.[2]
Paychex, Inc. provided payroll support services under the contract through July 1999. Beginning in July, Hoffman Siegel did not have sufficient funds in their bank account to cover its payroll and taxes. Thereafter, federal and state payroll taxes were not paid for quite some time.[3] According to Hoffman Siegel, they did not learn of the problems with their accounts until March 5, 2004 after receiving a notice from the IRS.[4] Because taxes were not paid, Hoffman Siegel allegedly owed the U.S. Treasury more than $2 million.
Thereafter, Hoffman Siegel filed the instant lawsuit against Mr. Lee, his wife, Elana Lee, First Bank and Trust Company, and Paychex, Inc. Hoffman Siegel alleged that Mr. Lee contracted with Paychex, Inc. in an effort to gain control over the firm's bank accounts in order to embezzle funds. Mr. Lee, according to Hoffman Siegel embezzled large sums of money by writing checks to his wife, Elana Lee, in addition to himself.[5] Hoffman Siegel, further alleged that Paychex, Inc. was negligent and breached its contract with Hoffman Siegel when Paychex discontinued *856 paying federal and state payroll taxes and failed to inform a partner at the firm that there were insufficient funds in the firm's bank account. Finally, Hoffman Siegel alleged that First Bank and Trust was negligent in its handling of its accounts and certain IRS payments.[6]
Paychex, Inc. immediately filed the Motion to Stay Proceedings and Enforce Arbitration at issue in this appeal. Paychex, Inc. argued that any dispute under the terms of the contract were subject to arbitration in New York. Hoffman Siegel opposed the motion by alleging that because Mr. Lee entered into the contract with Paychex, Inc. in an effort to gain control over Hoffman Siegel's account in an effort to embezzle, the contract was void for lack of consent, fraud and error. Additionally, Hoffman Siegel argues that the contract is unenforceable because it is adhesionary.
Paychex, Inc. responded that even if there was fraud, it was on the part of Hoffman Siegel's agent and not on the part of Paychex, Inc. Any error, Paychex, Inc. argued, was unilateral error and not sufficient to vitiate consent. Additionally, Paychex, Inc. argues that Hoffman Siegel agreed to the contract and only attempted to void the contract after the request for arbitration was filed. Paychex, Inc. also argues that fraud in the inducement is not applicable because Paychex, Inc. did not perpetrate a fraud upon Hoffman Siegel. Finally, Paychex, Inc. argues that it did not owe Hoffman Siegel a duty beyond the contract. According to Paychex, Inc., the partners at Hoffman Siegel were on notice that the payroll company had been changed because their paychecks had "Paychex" printed on the top. Also, Paychex argues that Hoffman Siegel had an obligation to monitor its own finances.
At a hearing on the matter, the trial judge denied Paychex, Inc.'s motion to compel arbitration. According to the trial court, Sutton's Steel & Supply, Inc. v. Bellsouth Mobility, Inc., 2000-511 (La. App. 3 Cir. 12/13/00), 776 So.2d 589, controlled and held that the contract was one of adhesion. The court did not determine whether the contract was void for lack of consent. Paychex, Inc. appealed the trial court's ruling refusing to compel arbitration.
For the reasons below, we reverse the ruling of the trial court.[7]

LAW AND ANALYSIS

Standard of Review
The issue of whether the trial judge should have compelled arbitration is a question of law. Dufrene v. HBOS Mfg., LP, 2003-2201 (La.App. 4 Cir. 4/7/04), 872 So.2d 1206, 1209 (citing Billieson v. City of New Orleans, 02-1993, p. 3 (La.App. 4 Cir. 9/17/03), 863 So.2d 557, 560). Therefore, when reviewing the grant or denial of a motion to compel arbitration, appellate courts determine whether the trial was legally correct or incorrect. Id. However, "[i]f the trial court's decision was based on an erroneous interpretation or application of law, rather than a valid exercise of discretion, such [an] incorrect decision is not entitled to deference by the reviewing court." Id (citing Conagra Poultry Co. v. Collingsworth, 30,155, p. 2 (La.App. 2 Cir. 1/21/98), 705 So.2d 1280, 1281-82).

Judicial Confession
On appeal, Paychex, Inc. argues for the first time that Hoffman Siegel cannot argue *857 that the contract is invalid because they have made a judicial confession in their petition for damages. According to Paychex, Inc., because Hoffman Siegel alleged that the contract was breached, they are prohibited from arguing fraud. We disagree.
Louisiana Civil Code article 1853 states that "[a] judicial confession is a declaration by a party in a judicial proceeding." It is "a party's explicit admission of an adverse factual element and has the effect of waiving evidence as to the subject of the admission-of withdrawing the subject matter of the confession from issue." Cichirillo v. Avondale Indus., Inc., 2004-2894 (La.11/29/05), 917 So.2d 424, 429 (citing Cheatham v. City of New Orleans, 378 So.2d 369, 375 (La.1979)). However, a party may amend the pleadings to cure any errors or omissions absent a showing that the adverse party was misled or deceived. Sinha v. Dabezies, 590 So.2d 795, 798 (La.App. 4 Cir.1991).
Hoffman Siegel refers to the "contract" several times in its petition and alleges that the contract was breached. Therefore, Paychex, Inc. asserts that allegations regarding breach of the contract mandate that we declare that Hoffman Siegel has made a judicial confession that a valid contract existed. Even if that were the case, Hoffman Siegel amended its petition to allege defects in the contract, thereby curing any judicial confession.

Contracts of Adhesion
The trial court based her decision to deny the motion to compel arbitration on Sutton's Steel & Supply, Inc. v. Bellsouth Mobility, Inc., 2000-511 (La.App. 3 Cir. 12/13/00) 776 So.2d 589. Bellsouth involved a class action lawsuit by consumers against Bellsouth Mobility. The cell company subscribers sued Bellsouth alleging that the company engaged in a pattern of misrepresenting its fees. Bellsouth countered with several exceptions that are not relevant here, which were denied. Thereafter, Bellsouth filed a motion to stay and compel arbitration. The trial court denied the motion and Bellsouth appealed.
On appeal, the Louisiana Third Circuit reviewed the contract at issue and held that the contract was one of adhesion. The court first noted that according to Louisiana Civil Code article 1983, the contract is the law of the parties and the courts will not relieve parties of bad bargains. Bellsouth, 776 So.2d at 592-93 (quoting Hanover Petroleum Corp. v. Tenneco, Inc., 521 So.2d 1234 (La.App. 3 Cir. 1988), writ denied, 526 So.2d 800 (La. 1988)). The court went on to say that the law does not require the parties to read every detail. However, the parties will be held to each portion as if each had been read. Id. at 593 (quoting McGoldrick v. Lou Ana Foods, Inc., 94-400, p. 8 (La.App. 3 Cir. 11/2/94), 649 So.2d 455, 460.)
However, the Third Circuit opined, the courts will not uphold agreements that are not formed with the benefit of the bargaining process. Id. at 593. Such contracts often stem from interactions with large business concerns entering into innumerable contracts, as with utility companies, airlines or insurance companies. Id.
"Contracts of adhesion are usually contained in standard forms . . . in small print . . . [and] present difficulties of interpretation concerning advantages allow to a party in the stronger position. That is actually a problem of acceptance, as the real question is whether the other party truly consented to all the printed terms."
Id. at 593 (quoting Consent Revisited: Offer Acceptance Option Right of First Refusal and Contracts of Adhesion in the Revision of the Louisiana Law of Obligations, *858 47 La.L.Rev. 699, 757-59 (1987)). Also important to the Third Circuit court was whether the contract greatly limited the rights of one of the parties, such as in airline ticket purchases or public utility contracts. Id.
The Third Circuit held that the Bellsouth contract was one of adhesion for several reasons. First the court determined that the font size was exceedingly small. Second, the court determined that Bellsouth presented no evidence that the consumers had any bargaining power. Further, the court held that the arbitration provisions were unduly burdensome upon the plaintiffs because the plaintiffs were required to arbitrate, while Bellsouth reserved the right to litigate any debts owed by the plaintiffs in district court.
Since the time that Bellsouth was decided, the Louisiana Supreme Court has ruled on the issues of adhesionary contracts and arbitration clauses. In Aguillard v. Auction Management Corp. 2004-2804 (La.6/29/05), 908 So.2d 1, the plaintiffs were patrons of an auction house. Upon entering the auction house, the plaintiffs were provided with a sales brochure, which included photographs of the merchandise and the rules of the auction. The entire document was printed in nine-point font, including the arbitration clause. All bidders were required to sign the document prior to receiving a bid number. The plaintiff signed the document prior to bidding. However, no representative of the defendant auction house signed the document.
Following a dispute on an auction purchase, the plaintiff sued the auction house. The auction house moved to submit the matter to arbitration citing the arbitration clause in the sales brochure. The district court denied the motion. The Louisiana Third Circuit affirmed on appeal holding that the contract was adhesionary and lacked mutuality. The Louisiana Supreme Court granted the writs.
The Supreme Court first stated that arbitration is favored under both the Louisiana and the United States jurisprudence. Aguillard, 908 So.2d at 7. Next the Court discussed contact of adhesion. Id. at 9. A contract of adhesion, according to the Louisiana Supreme Court is "a standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection of the weaker party. Id. Often in small print, these contracts sometimes raise a question as to whether or not the weaker party actually consented to the terms." Id. However, the Court held that not every standard contract is a contract of adhesion. Id. at 10 (citing Golz v. Children's Bureau of New Orleans, 326 So.2d 865, 869 (La. 1976)). A standard contract is just one indicator that a contract may be adhesionary. Id. The important issue is the consent of the parties to all of the printed terms of the contract. Id. The emphasis, therefore, is whether the contract unduly burdens the party with the weaker bargaining position. Id. "Once consent is called into question, the party seeking to invalidate the contract as adhesionary must then demonstrate the non-drafting party either did not consent to the terms in dispute or his consent was vitiated by error . . ." Id.
The Court went on to resolve the split between the circuits regarding arbitration clauses. The Second and Fourth circuits employed a liberal reading of arbitration clauses in contracts. Id. at 11. In contrast, the First and Third circuits employed a very conservative policy with regard to arbitration. Id. at 13. The Supreme Court held that the more liberal policy, employed by the Second and Fourth circuits, was more appropriate. Id. at 16.
*859 The Court then reviewed the contract at issue to determine whether it was a contract of adhesion. The Court noted that the font on the document was not unusually small. Id. Additionally, the font did not differ greatly from that of the rest of the document. Id. Also, the Court noted that the paragraphs were separated by spaces and was only two pages long. Id. The Court further held that there is a presumption of arbitrability. Id. The Court found that the arbitration agreement limited the rights of both parties, and not just the weaker party. Id. at 17. Moreover, the Court did not believe that there was a discrepancy in bargaining power between the two parties. Id. The plaintiff was not compelled to enter into it and could have possibly negotiated the terms if he did not agree. Id.
Considering the foregoing, we hold that the trial court erred when it concluded that the contract herein was a contract of adhesion based on the principles found in the Third Circuit Bellsouth case. Therefore, the trial court was legally incorrect per the Louisiana Supreme Court's holding in Augillard. Therefore, we review the instant matter de novo.
We begin by reviewing the instant case utilizing the factors enumerated by the Louisiana Supreme Court. First, we look at the font size and paragraph structure of the instant contract. The entire contract was printed in relatively small print. The arbitration clause did not appear to be significantly smaller than other portions of the contact. The three contracts totaled six pages. Within those six pages, the arbitration clause was stated twice.
Second, we look at the bargaining power of the parties. From the record in front of us, there is no evidence that Hoffman Siegel was compelled to enter in the contract with Paychex, Inc. Other service providers were available to provide this service and were in fact providing this service to Hoffman Siegel. Also, no evidence has been presented to demonstrate that Hoffman Siegel was in an inferior bargaining position.
Finally, we look at the limitations and hardships placed on the parties under the terms of the arbitration clause. Arbitration under the current contract would require the parties to proceed in Rochester, New York in accordance with the rules of the American Arbitration Association. The most problematic provision found in the arbitration clause is the one that allows Paychex, Inc. in its own discretion to litigate its claims for money under the contract. The issue, therefore, in this case is whether inconvenience alone is sufficient to invalidate a contract where the "weaker party" had the ability to negotiate the terms of the contract or simply to utilize another service provider. We hold that it is not. Therefore, we reverse the trial court's ruling that the contract is a contract of adhesion.

APPARENT/ACTUAL AUTHORITY
Because we are reviewing this matter de novo, we will also comment on the other issues raised by the parties on this matter in the trial court.
The principal may confer upon the mandatary the express authority to do what is appropriate under the circumstances. La. C.C art. 2994. Louisiana Civil Code article 3010 provides that the mandatary is bound to perform only those duties within the scope of the authority granted by the principal. However, the mandatary may also perform all acts incidental to the necessary performance of the mandate. La. C.C art. 2995.
Louisiana jurisprudence created the doctrine of apparent authority in *860 an effort to protect third parties "unauthorized acts of an apparent agent." Boulos v. Morrison, 503 So.2d 1, 3 (La.1987). In order for apparent authority to apply, the "principal must first act to manifest the alleged agent's authority to an innocent third party;" and the "third party must rely reasonably on the manifested authority of the agent." Id. The third party cannot simply rely on the apparent authority of the putative agent and must inquire into the extent of the power of the mandatary. Id. The third party must have a reasonable belief based on the facts that the putative mandatary in fact has authority. Salley v. Colonial Marine Indus., Inc., 95-2215 (La.App. 4 Cir. 09/11/96), 680 So.2d 1242, 1250.
Louisiana Civil Code article 3021 states "one who causes a third person to believe that another person is his mandatary is bound to the third person who in good faith contracts with the putative mandatary." However, under certain circumstances, a third party may not rely on the apparent authority of the mandatary, authority must be express. According to Louisiana Civil Code article 2997(5), express authority must exist in order to refer a matter to arbitration.
In its Petition for Damages, Hoffman Seigel stated that Mr. Lee "gained the complete trust and confidence of the officers, directors, associate attorneys and staff with respect to the management of the law firm and the handling of its finances." In his capacity as Legal Administrator/Chief Financial Officer, Mr. Lee had the responsibility for filing of all federal and state payroll tax returns.
In its First Supplemental and Amending Petition, Hoffman Seigel again stated that Mr. Lee gained the trust and confidence of management. In the amended petition, Hoffman Seigel alleged that Mr. Lee failed to show the contract to management and did not have the authority to sign the contract with Paychex, Inc.
Hoffman Seigel further alleged in its response to Paychex, Inc.'s appeal that Mr. Lee did not have express authority. Further, if Mr. Lee had apparent authority, Paychex, Inc. did not act reasonably and at the very least "from 1999 forward, Paychex was on notice of problems in the account and, thus, on notice that Mr. Lee might be acting beyond the scope of his apparent authority." Hoffman Seigel further states that "[m]ost of the money was stolen AFTER Paychex was placed on notice of Mr. Lee's lack of authority." (Emphasis theirs).
Paychex, Inc. counters, arguing that because Mr. Lee was the Legal Administrator/Chief Financial Officer, Mr. Lee did in fact have express authority to enter into the contract at issue. Additionally, Paychex, Inc. argues that the partners cannot argue that they had no knowledge of the contract signed by Mr. Lee because each of them received paychecks and tax forms with "Paychex, Inc." stamped on them. Therefore, Paychex, Inc. argues that Hoffman Seigel should not be able to go back in hindsight and argue that Mr. Lee did not have the proper authority or that Paychex, Inc. acted unreasonably in relying on Mr. Lee's authority as Legal Administrator/Chief Financial Officer AFTER the contract had already been signed. (Emphasis ours).
Hoffman Siegel has produced no information or documentation to dispute its own statements that Mr. Lee handled the finances of the law firm and that Mr. Lee was responsible for matters dealing with the payment of tax liabilities. The execution of the instant contract is within the authority of Mr. Lee to perform his duties for the maintenance of the tax accounts. Therefore, the trial court erred when it *861 failed to stay the proceedings and compel arbitration.

FRAUD
According to Louisiana Civil Code article 1948, consent may be vitiated by error, fraud or duress. Fraud for this purpose is defined as "misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." La. C.C. Art.1953. A party has an action based in fraud for the fraud or deceit committed by another. Sun DrillingProducts Corp. v. Rayborn, XXXX-XXXX (La.App. 4 Cir. 10/3/01), 798 So.2d 1141, 1152.
Hoffman Seigel does not argue that Paychex, Inc. committed a misrepresentation or fraudulently induced it to sign the contract. Instead, Hoffman Siegel argues that the instant contract should be vitiated because Mr. Lee (it's agent) signed the contract in an effort to perpetrate a fraud. Clearly, if the contract were between Mr. Lee and Hoffman Siegel then the contract would be void for lack of consent. However, Hoffman Siegel has produced no evidence demonstrating that Paychex, Inc. committed fraud in a manner to vitiate consent. Hoffman Siegel is attempting to attribute Mr. Lee's fraudulent intent to Paychex, Inc. instead of to Mr. Lee. We hold that there was not fraud in the inducement of the contract. Therefore, the trial court erred in denying Paychex, Inc.'s request to compel arbitration.

CONCLUSION
We hold that the contract between Paychex, Inc. and Hoffman Siegel is valid and the arbitration clause enforceable. Therefore, we reverse and remand to the trial court for proceedings in accordance with this judgment.
REVERSED AND REMANDED.
MURRAY, J., concurs and assigns reasons.
MURRAY, J., concurring and assigning reasons.
I agree with the majority's conclusion that the arbitration clause does not render the contract adhesionary in the instant case. However, I do not subscribe to the majority's view that a contractual provision such as the one at issue represents a "mere inconvenience." Under any circumstances, a contractual provision that requires one party to submit contractual disputes to arbitration but permits the other party elect between arbitration and some other forum is onerous, and in some cases may render the contract adhesionary. In the instant case, however, both parties are compelled to arbitrate all disputes arising out of the contract except for those concerning "moneys due and owing from client to Paychex," which disputes Paychex may, at its sole discretion, elect to litigate. Considering that only one category of disputes is affected by this lopsidedness of rights, and further that Hoffman, Siegel, as a law firm, is a clearly sophisticated client, I find in the instant case that the contract is not adhesionary. Accordingly, I respectfully concur in the result reached by the majority.
NOTES
[1] Mr. Lee executed the Paychex Electronic Network Services Agreement, the Paychex Service Agreement and the Paychex Human Resource Agreement.
[2] The contract also included a choice of law clause, stating that New York law would be applicable. The parties have not addressed this issue.
[3] Hoffman Siegel alleges that taxes were not paid for sixteen quarters. Evidence has not been presented to determine the accuracy of this number.
[4] According to Hoffman Siegel, they were only sent one delinquency notice dated February 4, 2004.
[5] Mr. Lee has since plead guilty to four counts of embezzlement.
[6] First Bank and Trust is not a party to this appeal. First Bank and Trust filed a Dilatory Exception of Vagueness or Ambiguity that is not at issue in the instant appeal.
[7] We limit our discussion to the issues regarding the signing of the contract and not the reasonability of Paychex, Inc.'s actions after the contract was signed.