776 So.2d 589 (2000)
SUTTON'S STEEL & SUPPLY, INC., et al.
v.
BELLSOUTH MOBILITY, INC.
Nos. 00 511-CW, 00 898-CA.
Court of Appeal of Louisiana, Third Circuit.
December 13, 2000.
Writ Denied March 16, 2001.
*590 Edward Hart Bergin, Genevieve Hartel Salassi, T. Michael Twomey, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P., New Orleans, LA, Coleman Douglas Ridley, Gary Jude Russo, Perret, Doise, Aplc, Lafayette, LA, Counsel for Defendant/Appellant BellSouth Mobility, Inc.
Jonathan Beauregard Andry, Andry & Andry, Lionel H. Sutton, III, Attorney at Law, New Orleans, LA, Counsel for Plaintiffs/Appellees Sutton's Steel & Supply, Inc., Kate Davis.
(Court composed of THIBODEAUX, DECUIR, and PETERS, Judges).
*591 PETERS, Judge.
This case is before us in the posture of a consolidated writ application and an appeal for review of a trial court ruling denying a motion to compel arbitration and to stay the proceedings. We affirm the judgment of the trial court.
This litigation began with the filing of a class action petition on June 24, 1999, by Sutton's Steel & Supply, Inc. (Sutton's Steel) and Kate Davis seeking an award of damages against BellSouth Mobility, Inc. (BellSouth) in connection with cellular telephone services obtained from BellSouth. Specifically, the plaintiffs alleged that BellSouth improperly charged them, and the members of the class represented by them, for time in whole-minute increments rounded up to the next minute and improperly charged them for other noncommunication time. They asserted that this action by BellSouth breached the contract for cellular services between the individual members of the class and BellSouth. Additionally, the plaintiffs asserted that BellSouth engaged in a pattern and practice of misrepresenting its fee schedule through advertisements and that this pattern and practice constituted negligent misrepresentation.
On August 11, 1999, BellSouth responded to the petition by filing declinatory, dilatory, and peremptory exceptions. The trial court has yet to rule upon these exceptions. On September 23, 1999, the plaintiffs filed a motion to certify the action as a class action. Before the trial court could hold a hearing on that motion, the litigants mutually agreed to continue any certification effort pending further discovery. However, on December 2, 1999, BellSouth filed a motion to compel the litigants to arbitrate the dispute and to stay the proceedings pending the arbitration process. After a hearing held on February 23, 2000, the trial court took the arbitration issue under advisement. It then rendered written reasons for judgment on March 24, 2000, denying the motion. BellSouth applied for supervisory writs to this court on April 12, 2000, and, on April 20, 2000, obtained an order granting it a suspensive appeal of the same judgment. On June 1, 2000, we consolidated BellSouth's writ application with the then unlodged appeal.
In considering the merits of the issues before us, we first note that neither side introduced any evidence at the February 23 hearing but simply presented oral argument which referred to certain documents attached to the pleadings and briefs filed in the trial record. BellSouth had attached two exhibits to its motion to compel arbitration and stay the proceedings, namely, copies of the contracts between BellSouth and the plaintiffs dated October 9, 1998. BellSouth's memorandum in support of its motion contained no additional attachments and referred only to the two exhibits attached to its motion. Attached to the plaintiffs' memorandum in opposition to BellSouth's motion were copies of the same contracts as well as copies of contracts between BellSouth and Sutton's Steels dated April 15, 1996, and June 16, 1994, and excerpts from the deposition of Lionel Sutton, the designated representative of Sutton's Steels, taken November 12, 1999.
The plaintiffs' brief in opposition to BellSouth's application for supervisory writs contained no attachments. However, after the plaintiffs filed their opposition brief, BellSouth filed a reply brief in support of its application, which contained as additional attachments a copy of Wireless Industry Arbitration Rules, effective July 15, 1997, and a copy of the administrative fee schedule of the American Arbitration Association, Wireless Industry Arbitration Rules. The plaintiffs then filed a supplemental brief in opposition to the supervisory writ application, which contained two additional attachments, namely, a policy statement from the Federal Communications Commission adopted February 29, 2000, and released March 1, 2000, and a copy of an order dated and filed May 11, 1999, in the matter of Bradley *592 S. Joiner and Catherine McKay v. Ameritech Mobile Communications, Inc., No. 96-L-121 of the Third Judicial Circuit, Madison County, Illinois.
While counsel for both litigants offered none of these exhibits as evidence at the February 23 hearing, both counsel freely acknowledged the existence of arbitration language found in the October 9, 1998 contracts between BellSouth and the plaintiffs. Counsel for the plaintiffs argued that the arbitration language was "adhesionary and unconscionable," primarily because of BellSouth's superior bargaining position. The plaintiffs also argued that the prior contracts with BellSouth contained no similar language and that they were not told of the change in the contract when they executed it. BellSouth argued that the language was added "to reduce the cost of dispute resolution" and "because it promotes an effective, efficient resolution of disputes." Further, BellSouth suggested that the procedure was "bilateral" and that only two issues were before the trial court: "[I]s it a valid clause, and does the nature of the dispute... fall within the scope of the clause?"
Thus, at the conclusion of the hearing, the trial court had no evidence offered for its consideration of the issue before it. However, in its written reasons for judgment, the trial court stated as fact much of the assertions of fact found in the memoranda filed by the litigants. In doing so, the trial court concluded that the arbitration clause was unconscionable and, therefore, unenforceable. We find error in the trial court's reliance on assertions in the memoranda as facts in evidence, but that error does not require us to conclude that the trial court's refusal to enforce the arbitration clause was in error.
Appellate courts are courts of record, and we must render judgment based on the record on appeal. La.Code Civ.P. art. 2164; Willis v. Letulle, 597 So.2d 456 (La.App. 1 Cir.1992). We may not review evidence that is not in the record, and we may not receive new evidence. Willis, 597 So.2d 456. Moreover, we may not even consider exhibits filed in the record if those exhibits were not also filed into evidence, unless we are otherwise authorized by law to do so (as in summary judgment procedure). Id. (quoting State ex rel. Guste v. Thompson, 532 So.2d 524, 527 n. 2 (La.App. 1 Cir.1988)).
Because the litigants presented no evidence for the trial court to consider, we must first determine what remains in the record for us to consider on appeal. In doing so, we conclude that only the October 9, 1998 contracts between BellSouth and the plaintiffs were properly before the trial court. We reach this conclusion by interpreting the plaintiffs' argument at the February 23 hearing to constitute a judicial confession that these contracts contained the arbitration language at issue. Louisiana Civil Code art. 1853 states: "A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it. A judicial confession is indivisible and it may be revoked only on the ground of error of fact." "It is also well settled that a judicial confession is a party's explicit admission of an adverse factual element and that it has the effect of waiving evidence as to the subject of the admission, of withdrawing the subject matter of the confession from issue." Cheatham v. City of New Orleans, 378 So.2d 369, 375 (La.1979) (emphasis added). Thus, even though the contracts were not introduced into evidence, the plaintiffs have "confessed" to their existence and the arbitration language found therein. Having determined what limited evidence we may consider on appeal, we turn to the merits of the issue before us.
Louisiana Civil Code art. 1983 provides in part: "Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law." "It is not within the province of the courts *593 to relieve parties of their bad bargains." Hanover Petroleum Corporation v. Tenneco Inc., 521 So.2d 1234 (La.App. 3 Cir.), writ denied, 526 So.2d 800 (La.1988) (citing Kenny v. Oak Builders, Inc. 256 La. 85, 235 So.2d 386 (1970)). Furthermore, "[t]he law does not compel people to read or to inform themselves of the contents of an instrument which they may choose to sign, but it holds them to the consequences, in the same manner and to the same extent as though they had exercised those rights." McGoldrick v. Lou Ana Foods, Inc., 94-400, p. 8 (La.App. 3 Cir. 11/2/94); 649 So.2d 455, 460.
However, as stated in Saul Litvinoff, Consent Revisited: Offer Acceptance Option Right of First Refusal and Contracts of Adhesion in the Revision of the Louisiana Law of Obligations, 47 La.L.Rev. 699, 757-59 (1987):
Contracts are not always formed through a bargaining process. Owing to the necessities of modern life a particular kind of contract has been developed where one of the parties is not free to bargain. That occurs when a business concern carries out its operation through a very large number of contracts entered into with innumerable co-contractants, as is the case with airlines, public utilities, railroad or insurance companies.
In fact, a private person applying for electricity for his home or buying passage from a public carrier is in no bargaining position at all. The offer of the party furnishing that kind of service adopts the form of a take it or leave it proposition, the acceptance of which is expected to be total submission to all the conditions stipulated by the offeror.
In that kind of situation the lack of balance between the parties' positions is evident, as one of them, quite unquestionably, is in a position stronger than the other's. The party in the weaker position is left with no other choice than to adhere to the terms proposed by the other, hence, "contract of adhesion" ....
. . . .
Contracts of adhesion are usually contained in standard forms, which is justified by the volume of business transacted by those concerns of the kind referenced above. Some clauses printed in those forms, occasionally in small print, may present difficulties of interpretation concerning the advantages allowed to the party in the stronger position. That is actually a problem of acceptance, as the real question is whether the other party truly consented to all the printed terms.
Though the theory of contracts of adhesion is mainly focused on transactions involving the rendering of public services by industries that are highly regulated because of the monopoly enjoyed by certain enterprises, the same or a very similar problem may arise in connection with transactions pertaining to activities that are less regulated or not regulated at all. Thus, for example, whether a clause that greatly limits the liability of a party is contained in an airfare ticket or a parking-lot ticket the problem is the same, although in the case of the airfare ticket the passenger perhaps had no choice because the carrier that issued it is the only one servicing that particular route, while in the case of the parking-lot ticket the owner of the car might have had a choice of several lots doing the same kind of business.
... [W]hether the contract is one of adhesion or one merely contained in a standard form, the enforceability of certain clauses, usually of the small print variety, may be questionable because the party now placed in a disadvantageous position by that clause was not aware that he was subscribing to it when he entered the contract.
The question, thus, is whether the party gave his consent to the clause in dispute or, when it is clear that it was given, whether that consent was vitiated by error. It is in the light of answers to those questions that courts attempt to *594 restore the fairness that is lacking in situations of that kind.
. . . .
Louisiana courts have asserted that they have not adopted the theory of contracts of adhesion, but they have further asserted that, where a party had no power to negotiate a contract, they may disregard a particular clause in the contract when that clause is unduly burdensome or extremely harsh....
. . . .
One of the article of the Louisiana Civil Code dealing with interpretation of contracts [La.Civ.Code art. 2056] provides that a contract executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party. That is a consequence of the more general principle of interpretation according to which, in case of doubt that cannot be resolved otherwise, a provision in a contract must be interpreted against the party who furnished the pertinent text.
That principle of interpretation, together with the principle that good faith must govern the conduct of the parties in whatever pertains to the obligation, provide useful tools to reach effective solutions to the problems that arise from contracts of adhesion.
(Footnotes omitted.)
Louisiana Civil Code art. 2056, as set forth in the above article, was enacted by Acts 1984, No. 331, § 1, and became effective January 1, 1985. According to the Revision Comments to the Article, while it is new, it did not change the law. Citing Golz v. Children's Bureau of New Orleans, Inc., 326 So.2d 865 (La.1976), Revision Comment (c) provides that "[u]nder the Article, a contract of adhesion must be interpreted against the party who prepared it." The supreme court in Golz defined a contract of adhesion as "a standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection of the weaker party. Often in small print, these contracts sometimes raise a question as to whether or not the weaker party actually consented to the terms." Golz, 326 So.2d at 869. Further, as alluded to in the above law review article, La.Civ.Code art. 1983 provides in part: "Contracts must be performed in good faith."
The arbitration clause at issue in the instant case is contained in a standard form contract furnished by BellSouth. It appears in the contract in the following print size:
INDEPENDENT ARBITRATION (PLEASE READ THIS PARAGRAPH CAREFULLY. IT AFFECTS RIGHTS THAT YOU MAY OTHERWISE
HAVE.)
(a) COMPANY AND CUSTOMER SHALL USE THEIR BEST EFFORTS TO SETTLE ANY DISPUTE OR CLAIM ARISING FROM OR
 RELATING TO THIS AGREEMENT. TO ACCOMPLISH THIS, THEY SHALL NEGOTIATE WITH EACH OTHER IN GOOD FAITH. IF
 COMPANY AND CUSTOMER DO NOT REACH AGREEMENT WITHIN 30 DAYS, INSTEAD OF SUING IN COURT, COMPANY AND
 CUSTOMER AGREE TO ARBITRATE ANY AND ALL DISPUTES AND CLAIMS (INCLUDING BUT NOT LIMITED TO CLAIMS BASED ON
 OR ARISING FROM AN ALLEGED TORT) ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR TO ANY PRIOR AGREEMENT
 FOR CELLULAR PRODUCTS OR SERVICE BETWEEN CUSTOMER AND COMPANY OR ANY OF CUSTOMER'S OR COMPANY'S
 AFFILIATES OR PREDECESSORS IN INTEREST.
(b) NOT WITHSTANDING THE PROVISIONS OF PARAGRAPH (a), NO CLAIM OR DISPUTE SHALL BE SUBMITTED TO ARBITRATION IF,
 AT THE TIME OF THE PROPOSED SUBMISSION, SUCH DISPUTE OR CLAIM INVOLVES AN ATTEMPT TO COLLECT A DEBT OWED
 TO THE COMPANY BY THE CUSTOMER.
(c) THE ARBITRATION OF ANY DISPUTE OR CLAIM SHALL BE CONDUCTED IN ACCORDANCE WITH THE WIRELESS INDUSTRY
 ARBITRATION RULES ("WIA RULES") AS MODIFIED BY THIS AGREEMENT AND AS ADMINISTERED BY THE AMERICAN ARBITRATION
 ASSOCIATION ("AAA"). THE WIA RULES AND FEE INFORMATION ARE AVAILABLE FROM COMPANY OR THE AAA UPON
 REQUEST.
(d) COMPANY AND CUSTOMER ACKNOWLEDGE THAT THIS AGREEMENT EVIDENCES A TRANSACTION IN INTERSTATE COMMERCE
 AND THAT THE UNITED STATES ARBITRATION ACT AND FEDERAL ARBITRATION LAW SHALL GOVERN THE INTERPRETATION
 AND ENFORCEMENT OF, AND PROCEEDINGS PURSUANT TO, THIS OR A PRIOR AGREEMENT.
(e) UNLESS COMPANY AND CUSTOMER AGREE OTHERWISE, THE LOCATION OF ANY ARBITRATION SHALL BE IN THE CITY WHERE
 COMPANY'S MOBIL TELEPHONE SWITCHING OFFICE FOR CUSTOMER'S ACCESS NUMBER IS LOCATED.
(f) COMPANY AND CUSTOMER AGREE THAT NO ARBITRATOR HAS THE AUTHORITY TO: (1) AWARD RELIEF IN EXCESS OF WHAT
 THIS OR A PRIOR AGREEMENT PROVIDES; (2) AWARD PUNITIVE DAMAGES OR ANY OTHER DAMAGES NOT MEASURED BY THE
 PREVAILING PARTY'S ACTUAL DAMAGES; OR (3) ORDER CONSOLIDATION OR CLASS ARBITRATION.
(g) EXCEPT AS OTHERWISE PROVIDED HEREIN, ALL FEES AND EXPENSES OF THE ARBITRATION SHALL BE EQUALLY BORNE BY
 CUSTOMER AND COMPANY.
(h) THE ARBITRATOR(S) MUST GIVE EFFECT TO THE LIMITATIONS ON COMPANY'S LIABILITY AS SET FORTH IN THIS OR A PRIOR
 AGREEMENT, ANY APPLICABLE TARIFF, LAW, OR REGULATION.
(i) IN ANY ARBITRATION UTILIZING THE RULES APPLICABLE TO LARGE/COMPLEX CASES, AS DEFINED UNDER THE WIA RULES,
 THE ARBITRATORS MUST ALSO APPLY THE FEDERAL RULES OF EVIDENCE, AND THE LOSING PARTY MAY HAVE THE AWARD
 REVIEWED IN ACCORDANCE WITH THE REVIEW PROCEDURES SET FORTH IN THE WIA RULES.
*595
(j) CUSTOMER AGREES THAT COMPANY AND CUSTOMER EACH IS WAIVING ITS RESPECTIVE RIGHT TO A TRIAL BY JURY.
 CUSTOMER ACKNOWLEDGES THAT ARBITRATION IS FINAL AND BINDING AND SUBJECT TO ONLY VERY LIMITED REVIEW BY A
 COURT. IF FOR SOME REASON THIS ARBITRATION CLAUSE IS AT SOME POINT DEEMED INAPPLICABLE OR INVALID,
 CUSTOMER AND COMPANY AGREE TO WAIVE, TO THE FULLEST EXTENT ALLOWED BY LAW, ANY TRIAL BY JURY. IN SUCH
 CASE, A JUDGE SHALL DECIDE THE SUBJECT DISPUTE OR CLAIM.
(k) COMPANY, CUSTOMER AND ARBITRATOR(S) SHALL NOT DISCLOSE THE EXISTENCE, CONTENT, OR RESULTS OF ANY ARBITRATION.
 JUDGEMENT ON THE AWARD RENDERED BY THE ARBITRATOR(S) MAY BE ENTERED IN ANY COURT HAVING JURISDICTION
 THEREOF.
When presented in the same size print as appears in this opinion, the clause reads as follows:
INDEPENDENT ARBITRATION (PLEASE READ THIS PARAGRAPH CAREFULLY. IT AFFECTS RIGHTS THAT YOU MAY OTHERWISE HAVE.)
(a) COMPANY AND CUSTOMER SHALL USE THEIR BEST EFFORTS TO SETTLE ANY DISPUTE OR CLAIM ARISING FROM OR RELATING TO THIS AGREEMENT. TO ACCOMPLISH THIS, THEY SHALL NEGOTIATE WITH EACH OTHER IN GOOD FAITH. IF COMPANY AND CUSTOMER DO NOT REACH AGREEMENT WITHIN 30 DAYS, INSTEAD OF SUING IN COURT, COMPANY AND CUSTOMER AGREE TO ARBITRATE ANY AND ALL DISPUTES AND CLAIMS (INCLUDING BUT NOT LIMITED TO CLAIMS BASED ON OR ARISING FROM AN ALLEGED TORT) ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR TO ANY PRIOR AGREEMENT FOR CELLULAR PRODUCTS OR SERVICE BETWEEN CUSTOMER AND COMPANY OR ANY OF CUSTOMER'S OR COMPANY'S AFFILIATES OR PREDECESSORS IN INTEREST.
(b) NOTWITHSTANDING THE PROVISIONS OF PARAGRAPH (a), NO CLAIM OR DISPUTE SHALL BE SUBMITTED TO ARBITRATION IF, AT THE TIME OF THE PROPOSED SUBMISSION, SUCH DISPUTE OR CLAIM INVOLVES AN ATTEMPT TO COLLECT A DEBT OWED TO THE COMPANY BY THE CUSTOMER.
(c) THE ARBITRATION OF ANY DISPUTE OR CLAIM SHALL BE CONDUCTED IN ACCORDANCE WITH THE WIRELESS INDUSTRY ARBITRATION RULES ("WIA RULES") AS MODIFIED BY THIS AGREEMENT AND AS ADMINISTERED BY THE AMERICAN ARBITRATION ASSOCIATION ("AAA"). THE WIA RULES AND FEE INFORMATION ARE AVAILABLE FROM COMPANY OR THE AAA UPON REQUEST.
(d) COMPANY AND CUSTOMER ACKNOWLEDGE THAT THIS AGREEMENT EVIDENCES A TRANSACTION IN INTESTATE COMMERCE AND THAT THE UNITED STATES ARBITRATION ACT AND FEDERAL ARBITRATION LAW SHALL GOVERN THE INTERPRETATION AND ENFORCEMENT OF, AND PROCEEDINGS PURSUANT TO, THIS OR A PRIOR AGREEMENT.
(e) UNLESS COMPANY AND CUSTOMER AGREE OTHERWISE, THE LOCATION OF ANY ARBITRATION SHALL BE IN THE CITY WHERE COMPANY'S MOBIL TELEPHONE SWITCHING OFFICE FOR CUSTOMER'S ACCESS NUMBER IS LOCATED.
(f) COMPANY AND CUSTOMER AGREE THAT NO ARBITRATOR HAS THE AUTHORITY TO: (1) AWARD RELIEF IN EXCESS OF WHAT THIS OR A PRIOR AGREEMENT PROVIDES; *596 (2) AWARD PUNITIVE DAMAGES OR ANY OTHER DAMAGES NOT MEASURED BY THE PREVAILING PARTY'S ACTUAL DAMAGES; OR (3) ORDER CONSOLIDATION OR CLASS ARBITRATION.
(g) EXCEPT AS OTHERWISE PROVIDED HEREIN, ALL FEES AND EXPENSES OF THE ARBITRATION SHALL BE EQUALLY BORNE BY CUSTOMER AND COMPANY.
(h) THE ARBITRATOR(S) MUST GIVE EFFECT TO THE LIMITATIONS ON COMPANY'S LIABILITY AS SET FORTH IN THIS OR A PRIOR AGREEMENT, ANY APPLICABLE TARIFF, LAW, OR REGULATION.
(i) IN ANY ARBITRATION UTILIZING THE RULES APPLICABLE TO LARGE/COMPLEX CASES, AS DEFINED UNDER THE WIA RULES, THE ARBITRATORS MUST ALSO APPLY THE FEDERAL RULES OF EVIDENCE, AND THE LOSING PARTY MAY HAVE THE AWARD REVIEWED IN ACCORDANCE WITH THE REVIEW PROCEDURES SET FORTH IN THE WIA RULES.
(j) CUSTOMER AGREES THAT COMPANY AND CUSTOMER EACH IS WAIVING ITS RESPECTIVE RIGHT TO A TRIAL BY JURY. CUSTOMER ACKNOWLEDGES THAT ARBITRATION IS FINAL AND BINDING AND SUBJECT TO ONLY VERY LIMITED REVIEW BY A COURT. IF FOR SOME REASON THIS ARBITRATION CLAUSE IS AT SOME POINT DEEMED INAPPLICABLE OR INVALID, CUSTOMER AND COMPANY AGREE TO WAIVE, TO THE FULLEST EXTENT ALLOWED BY LAW, ANY TRIAL BY JURY. IN SUCH CASE, A JUDGE SHALL DECIDE THE SUBJECT DISPUTE OR CLAIM.
(k) COMPANY, CUSTOMER AND ARBITRATOR(S) SHALL NOT DISCLOSE THE EXISTENCE, CONTENT, OR RESULTS OF ANY ARBITRATION. JUDGMENT ON THE AWARD RENDERED BY THE ARBITRATOR(S) MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF.
Initially, we note the jurisprudential tenet that "[t]here is a strong presumption in favor of arbitration and against finding a waiver or default." Moore v. Automotive Protection Corp., 97-0623 (La.App. 4 Cir. 5/21/97); 695 So.2d 550, 551. Additionally, La.R.S. 9:4201 provides:
A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
Clearly, the mere fact that the contract contains an arbitration provision does not render it adhesionary.
However, the clause is on BellSouth's standard form and is in exceedingly small print. Furthermore, BellSouth presented no evidence to show that the plaintiffs were even in a position to bargain over the arbitration provisions in question. Moreover, the substance of the arbitration provision is unduly burdensome and extremely harsh. Importantly, while BellSouth attempts to bind the plaintiffs to arbitration, it reserves unto itself the option of pursuing other remedies, including court action. Specifically, in paragraph *597 (b), BellSouth clearly excludes from arbitration any "ATTEMPT TO COLLECT A DEBT OWED TO [BELLSOUTH] BY THE [PLAINTIFFS]." Thus, BellSouth has reserved unto itself the right to pursue an open account debt and collect the attorney fees and costs allowed in such an action by La.R.S. 9:2781 while, at the same time, limiting the plaintiffs to only the relief available under the arbitration clause for any claims they may have. Furthermore, when considering that the word "debt" is not defined in the arbitration clause, it could easily be construed to apply to any action that one might imagine BellSouth could pursue against the plaintiffs. Concomitantly, the contract purports to impose the Wireless Industry Arbitration Rules, including arbitration fees, upon claims brought by the plaintiffs, while allowing BellSouth to avail itself of the procedural and substantive laws of this state for the claims it brings since it may bring its claims in state court. We further note that, while it is yet to be certified as such, the matter before us is captioned as a class action. BellSouth excludes class actions from any relief by virtue of paragraph (f), which prohibits any arbitrator from "ORDER[ING] CONSOLIDATION OR CLASS ARBITRATION." As set forth above, good faith must govern the performance of all contracts. See La.Civ.Code art. 1983. Such disproportionate dispensation by BellSouth of rights and remedies is arbitrary and is lacking in good faith. In fact, the promise by BellSouth to arbitrate is totally illusionary and is actually no promise at all. We do not find, under these circumstances, the consent requisite for the enforcement of this provision, and, thus, we decline to recognize this adhesionary provision.

DISPOSITION
For the foregoing reasons, we affirm the judgment of the trial court and remand to the district court for further proceedings. We assess all costs of this appeal to BellSouth.
AFFIRMED.