# STATE OF LOUISIANA

## COURT OF APPEAL, THIRD CIRCUIT

### 04-393

DAVE F. AGUILLARD

VERSUS

AUCTION MANAGEMENT CORP.
GILMORE AUCTION & REALTY COMPANY
BANK OF NEW YORK and its Servicer,
NEW SOUTH FEDERAL SAVING BANK

**************
**SYLVIA R. COOKS**
**JUDGE**
**************

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, DOCKET NUMBER 2003-002117-A
HONORABLE D. KENT SAVOIE, PRESIDING

Court composed of Sylvia R. Cooks, Marc T. Amy, and John B. Scofield,[*] Judges.

Amy, J., dissents and assigns written reasons.

**AFFIRMED.**

Joseph Delafield
3401 Ryan Street, Suite 307
P.O. Box 4272
Lake Charles, Louisiana 70606
(337) 477-4655
COUNSEL FOR APPELLEE/PLAINTIFF:
    Dave F. Aguillard

Denisse Y. Parrales
George S. Hesni II
407 Huey P. Long Avenue
Gretna, Louisiana 70053
(504) 361-0018
COUNSEL FOR APPELLANT/DEFENDANT:
    Auction Management Corporation and Gilmore Auction & Realty Co.

---

[*]John B. Scofield participated in this decision by appointment of the Louisiana Supreme Court as Judge *Pro Tempore.*

Michael H. Pinkerton
William H. Berglund
Frilot, Partridge, Kohnke & Clements, L.C.
1100 Poydras Street, Suite 3600
New Orleans, Louisiana 70163-3600
(504) 599-8000
COUNSEL FOR APPELLANT/DEFENDANT:
    Bank of New York, and its Servicer, New South Federal Savings Bank

**COOKS, Judge.**

## STATEMENT OF THE CASE

Bank of New York, and its Servicer, New South Federal Savings Bank, Auction Management Corporation, and Gilmore Auction and Realty Company appeal the trial court's decision denying their Motion to Stay Proceedings Pending Arbitration. For the reasons assigned below, we affirm the decision of the trial court.

## STATEMENT OF THE FACTS

On March 25, 2003, Dave F. Aguillard participated in a public auction in Sulphur, Louisiana and submitted the highest bid to acquire a residential dwelling. Mr. Aguillard was informed the property was owned by the Bank of New York. The auction was conducted by Auction Management Corporation and Gilmore Auction & Realty Company (Auction Management and Gilmore Realty). Prior to the auction, Auction Management and Gilmore Realty disseminated a sales brochure to prospective bidders which pictured and described each of the auctioned properties and the rules which govern the auction. Mr. Aguillard obtained a brochure prior to the event.

On the day of the auction, Mr. Aguillard signed two documents. The first, prior to bidding, entitled "Auction Terms and Conditions" which contains the arbitration clause in dispute. This document is printed in nine-point type and the arbitration clause is found under the section entitled "Announcements." The arbitration clause is printed below in nine-point type as it appears in the document signed by Mr. Aguillard:

> Any controversy or claim arising from or relating to this agreement or any breach of such agreement shall be settled by arbitration administered by the American Arbitration Association under is (sic) rules, and judgment on the award rendered by the arbitrator may be entered in any court having jurisdiction thereof.

In addition to the arbitration clause, the "Auction Terms & Conditions"

3

documents contains the following provisions:

> All announcements from the Auction block will take precedence over all previously printed material and other oral statements made. The Auction Agreement for the Purchase and Sale of Real Estate represents the final contracted terms.
>
> . . . .
>
> The sellers reserve the right to withdraw any property from the Auction at any time.
>
> . . . .
>
> If the purchaser fails to comply with any of these *Auction Terms and Conditions* the sale shall be canceled, and the seller may, at its option retain the earnest money deposit as liquidated damages. If any sale is so canceled prior to the completion of the Auction, the property may, at the Auctioneer's discretion be <u>re-offered and resold.</u>
>
> _____. . . .
>
> All bidders will be bound by announcements made at the auction, even though a bidder may not have actually heard the announcement.

All potential bidders were required to sign the document prior to receiving a bid number. Mr. Aguillard was the highest bidder on the residential dwelling. Upon completion of bidding, Mr. Aguillard signed a document entitled "Auction Real Estate Sales Agreement" and submitted his check to Auction Management and Gilmore Realty in the amount of $4,290.00, which represented ten percent of the sales price on the property.

The seller, Bank of New York, subsequently rejected Mr. Aguillard's bid, and refused to close the sale on the property. Bank of New York argued the auction was not an "absolute auction" and any offer to purchase was subject to the seller's confirmation. Mr. Aguillard filed suit to enforce the Auction Real Estate Sales Agreement against Bank of New York, Auction Management Corporation and Gilmore Auction and Realty Company. Defendant/Appellants then filed a Motion to Stay Pending Arbitration. Defendants contend the arbitration clause contained in the Auction Terms and Conditions document governs this dispute. The trial court disagreed. We affirm.

4

## LAW AND DISCUSSION

A contract of adhesion was defined by the Louisiana Supreme Court as a "standard contract, usually in printed form, prepared by a party of superior bargaining power for adherence or rejection of the weaker party. Often in small print, these contracts sometimes raise a question as to whether or not the weaker party actually consented to the terms." *Golz v. Children's Bureau of New Orleans*, 326 So.2d 865, 869 (La.1976). Professor Saul Litvinoff further explains a contract of adhesion:

> Contracts are not always formed through a bargaining process. Owing to the necessities of modern life a particular kind of contract has been developed where one of the parties is not free to bargain. That occurs when a business concern carries out its operation through a very large number of contracts entered into with innumerable co-contractants, as in the case with airlines, public utilities, railroad or insurance companies.
> . . . .
> In that kind of situation the lack of balance between the parties' positions is evident, as one of them, quite unquestionably, is in a position stronger than the other's. The party in the weaker position is left with no other choice than to adhere to the terms proposed by the other, hence, "contract of adhesion[.]"
> . . . .
> Contracts of adhesion are usually contained in standard forms, which is justified by the volume of business transacted by those concerns of the kind referenced above. Some clauses printed in those forms, occasionally in small print, may present difficulties of interpretation concerning the advantages allowed to the party in the stronger position.
> . . . .
> The question, thus, is whether the party gave his consent to the clause in dispute or, when it is clear that it was given, whether that consent was vitiated by error.

Saul Litvinoff, *Consent Revisited: Offer, Acceptance, Option Right of First Refusal and Contracts of Adhesion in the Revision of the Louisiana Law of Obligations*, 47 La.L.Rev. 699, 757-59 (1987). [footnotes omitted.]

Two recent cases from this circuit discussed the effect of arbitration clauses in standard form contracts between a business enterprise and an individual consumer.

In *Sutton's Steel & Supply, Inc. v. Bell South Mobility, Inc.*, 2000-511 (La.App. 3 Cir. 12/13/00), 776 So.2d 589, *writ denied*, 2001-0152 (La. 3/16/01), 787 So.2d 316,

5

plaintiffs filed a class action suit against BellSouth Mobility alleging improper charges for cellular service. BellSouth filed a motion to stay and to compel arbitration relying on an arbitration clause contained in the cell phone service contract signed by plaintiffs. This court found the arbitration clause was contained in a standard form contract, was in "exceedingly small print", and prospective customers were not in an equal bargaining position with BellSouth with regard to provisions in the contract. *Id.* at 597. The *Sutton* court found the contract was adhesionary and unenforceable.

In *Simpson v. Grimes*, 2002-0869 (La.App. 3 Cir. 5/21/03), 849 So.2d 740, *writ denied*, 2003-2497 (La. 12/19/03), 861 So.2d 567, plaintiffs sued their broker and brokerage firm for mismanagement of an IRA account. The standard form contract signed by plaintiffs contained an arbitration clause printed in seven-point type. This court found the contract containing the arbitration provision was adhesionary because the client had no choice in negotiating the provisions of the contract prior to acceptance and to require the client to arbitrate disputes was unduly burdensome. Moreover, the court found the company was not bound by the arbitration provision and therefore the contract lacked mutuality. The court noted:

> [B]oth federal and state law recognize a presumption in favor of arbitration, and against finding a waiver or default, has been recognized in Louisiana jurisprudence and legislation. However, despite that presumption arbitration agreements are not blindly validated where there is evidence that they contain material faults which render them unconscionable and unduly burdensome to one party.

*Id.* at 747.

In the present case, Mr. Aguillard was not in a position to bargain regarding the terms of the agreement with Auction Management, Gilmore Realty or Bank of New York. He was required to sign the document prior to receiving a bid number and participating in the auction. The Defendants were clearly in a superior bargaining

6

position. The document Mr. Aguillard was required to sign was printed in extremely small type and the arbitration clause was not distinguished in any way. Mr. Aguillard was unaware he was waiving his right to pursue a grievance against Defendants in a court of law. Moreover, by its terms, the Defendants reserved methods of dispute resolution other than arbitration, methods they contend are not available to the auction customers. The auction document contains the following provision:

> If the purchaser fails to comply with any of these *Auction Terms and Conditions* the sale shall be canceled, and the seller may, at its option retain the earnest money deposit as liquidated damages. If any sale is so canceled prior to the completion of the Auction, the property may, at the Auctioneer's discretion be re-offered and resold.

In the event of a dispute, the Defendants are able to retain the earnest money deposit, unilaterally cancel the agreement and re-offer the property for sale. The buyer, however, must resort to arbitration to resolve any alleged failure of Auction Managment or Gilmore to comply with the terms and conditions. Moreover, another provision gives the Defendants the right to alter or delete the terms and conditions of the document, including the arbitration clause, after the bidder has signed it. The auction document contains the following provisions:

> All announcements from the Auction block will take precedence over all previously printed material and other oral statements made. The Auction Agreement for the Purchase and Sale of Real Estate represents the final contracted terms.
>      . . . .
> All bidders will be bound by announcements made at the auction, even though a bidder may not have actually heard the announcement.

This clause allows the auction company to make verbal "announcements" from the auction block which "will take precedence over all previously printed material." Consequently, the auction company had the unilateral power to completely change any and all parts of the contract, including the arbitration clause. Even though Mr. Aguillard submitted a proper bid and timely made the proper deposit, he was denied

7

the purchase because of this supposed announcement by the auctioneer. Apparently, the auctioneer's announcements were recorded on tape. However, the Defendants did not produce the tape recording of the announcements at the hearing. In order for a contract to be valid both parties must mutually and freely agree to all of its terms and conditions. We find the entire contract, including the arbitration clause, is adhesionary and lacks mutuality and, therefore, we affirm the decision of the trial court denying the Motion to Stay Pending Arbitration.

## DECREE

Based on the foregoing review of the record, we affirm the decision of the trial court. All costs of this appeal are to be divided equally between Auction Management Corporation, Gilmore Auction and Realty Company, and New York Bank, and its Servicer, New South Federal Savings Bank.

**AFFIRMED.**

NUMBER 04-393

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

DAVE F. AGUILLARD

VERSUS

AUCTION MANAGEMENT CORP., GILMORE AUCTION, ETC. AND BANK OF NEW YORK

AMY, J., dissenting.

I respectfully dissent from the majority's affirmation as I find error in the trial court's denial of the Motion to Stay Proceedings Pending Arbitration. My review of the arbitration clause at issue indicates that it is not part of a contract of adhesion which would render it unenforceable. *See Golz v. Children's Bureau of New Orleans, Inc.*, 326 So.2d 865, 869 (La.1976), wherein the Louisiana Supreme Court noted that contracts of adhesion "sometimes raise a question as to whether or not the weaker party actually consented to the terms." First, I point out that the arbitration clause at issue is contained in a two-page document. Neither the print nor the font size of the arbitration agreement differs from that on the remainder of the contract. It does not appear to me that the arbitration clause is hidden within the document in any way which would indicate that the plaintiff's consent to the agreement can be called in to question. The underlying transaction itself, a real estate auction, does not indicate that, in this case, it was such a necessary transaction to indicate that the plaintiff was compelled to enter into the terms of the contract. He could have either attempted to negotiate the terms of the contract or refuse to participate in the auction.

Furthermore, I note the presence of positive law favoring the enforcement of arbitration agreements. The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, sets forth the statutory guidelines for use in considering arbitration agreements under federal law. Section 2 of that Act provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any such contract.

*See also*, 9 U.S.C. § 3, which requires a stay of proceedings in a suit in which a matter is found to be referable to arbitration. Further, the United States Supreme Court has instructed that, in the event of doubt as to whether issues are subject to arbitration, the issue should be resolved in favor of arbitration. *See Moses H. Cone Memorial Hosp. v. Mercury Const.*, 460 U.S. 1, 103 S.Ct. 927 (1983). This construction in favor of arbitration is applicable "whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.*, 460 U.S. at 25, 103 S.Ct. at 941.

While United States Supreme Court jurisprudence is clear that the Federal Arbitration Act preempts state law in cases involving transactions which affect commerce, *see Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 115 S.Ct. 834 (1995), Louisiana's legislation on the subject is styled similarly to the FAA. Louisiana Revised Statutes 9:4201 provides:

> A provision in any written contract to settle by arbitration a controversy thereafter arising out of the contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

*See also* La.R.S. 9:4202 which, like 9 U.S.C. § 3, provides for a stay of proceedings in the trial court during pendency of arbitration.

The United States Supreme Court has observed that the states retain the ability to regulate contracts involving arbitration agreements and explained that states may

2

do so under general contract law as is referenced in the final section of 9 U.S.C. § 2. *Allied-Bruce*, 513 U.S. 265, 115 S.Ct. 834. This premise is clearly applicable in this case as the parties are concerned with whether the arbitration clause is susceptible to a determination that it is an adhesionary contract. However, the Supreme Court has further advised that: "What States may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause. The Act makes any such state policy unlawful, for that kind of policy would place arbitration clauses on an unequal 'footing,' directly contrary to the Act's language and Congress' intent. *See Volt Information Services, Inc.*, 489 U.S., at 474, 109 S.Ct., at 1253," *Id.* 513 U.S. at 281, 115 S.Ct. at 843. Thus, in my opinion, if the arbitration clause fails in this case due to a finding of adhesion, the enforceability of the contract in its entirety must be considered in light of that principle.

I am mindful of the cases cited by the plaintiff in this case, *Simpson v. Grimes*, 02-0869 (La.App. 3 Cir. 5/21/03), 849 So.2d 740, *writ denied*, 03-2497 (La. 12/19/03), 861 So.2d 567 and *Sutton's Steel v. BellSouth Mobility*, 00-511 (La.App. 3 Cir. 12/13/00), 776 So.2d 589, *writ denied*, 01-152 (La. 3/16/01), 787 So.2d 316. However, I do not find that the arbitration agreement, considering the entirety of the contract, bears the hallmarks of an adhesionary contract. Rather, the contract is a straightforward, two-page document. The plaintiff, if unsatisfied with the terms, was entitled to refuse to participate in the auction. Furthermore, in light of the positive law indicating the favorable consideration afforded arbitration agreements in both federal and state legislation, I do not find the above cases controlling. *See Doerr v. Mobil Oil Corp.*, 00-947, p. 14 (La. 12/19/00), 774 So.2d 119, 129, wherein the Louisiana Supreme Court explained that due to this state's civilian tradition, "it is

3

only when courts consistently recognize a long-standing rule of law outside of legislative expression that the rule of law will become part of Louisiana's custom under Civil Code article 3 and be enforced as the law of the state."

Given my differing views from those of the majority, I dissent.